**GREENE, TWEED OF DELAWARE, INC.,**

v.

**DUPONT DOW ELASTOMERS, L.L.C.**

No. CIV. A. 00-3058.

United States District Court,
E.D. Pennsylvania.

May 3, 2001.

Gupta, Samuel Waxman, Clifford, Chance, Rogers & Wells LLP, New York City, for DuPont Dow Elastomers, L.L.C.

## MEMORANDUM AND ORDER

WELSH, United States Magistrate Judge.

Plaintiff, Greene, Tweed of Delaware, Inc. ("Green, Tweed"), brought this action alleging that certain activities relating to the manufacture and sale of various products of defendant, DuPont Dow Elastomers, L.L.C. ("DuPont Dow"), infringe United States Patent No. 5,461,107 ("the '107 patent"). Plaintiff further contends that DuPont Dow's infringement was willful, and plaintiff therefore seeks, *inter alia*, increased damages and attorneys' fees.

Presently before the Court is Plaintiff's Motion to Compel Documents Identified in Defendant's Privilege Log and Relating to DuPont Dow's Opinion of Counsel Upon Which it Intends to Rely to Rebut a Charge of Willful Infringement. Specifically, plaintiff requests that the Court enter an Order compelling DuPont Dow to produce the following documents identified in DuPont Dow's Second Privilege Log:[1] Document Nos. 1-13, 15, 17, 18, 20, 23, 24 and 27.[2] *See* Pl.'s Mot. to Compel Docs. at 1. Furthermore, claiming that certain documents are insufficiently described in the Second Privilege Log, plaintiff requests that the Court compel DuPont Dow to produce the following documents identified in the Second Privilege Log, or in the alternative, produce the documents for "attorneys' eyes only review" under the oversight of DuPont Dow's counsel: Document Nos. 19, 22, 25 and 26.[3] *See* Pl.'s Mem. at 26.

In support of the present motion, plaintiff alleges that, in light of the fact that DuPont

Ronald L. Panitch, Panitch, Schwarze, Jacobs and Nadel, Kevin R. Hamel, Lynda L. Calderone, Kristyne A. Bullock, Akin, Gump, Strauss, Hauer & Feld, LLP, Philadelphia, PA, David P. Callet, Akin, Gump, Strauss, Hauer & Feld, Michael S. Caldwell, Shari L. Fleishman, Akin, Gump, Strauss, Hauer & Feld, Washington, DC, for Greene, Tweed of Delaware, Inc.

Mark S. Stewart, Ballard, Spahr, Andrews and Ingersoll, Philadelphia, PA, Leora Ben-Ami, Gerard P. Norton, Philip E. Roux, Neer

1. On or about March 7, 2001, DuPont Dow produced a privilege log (hereinafter referred to as "First Privilege Log") (attached to Pl.'s Mem. as Ex. "1") identifying the documents which DuPont Dow believed to be protected by the attorney-client privilege or work product immunity. After reconsidering whether any of the withheld documents were improperly designated as privileged, and in an attempt to, among other things, provide more detailed descriptions of the withheld documents, DuPont Dow subsequently provided a second privilege log (hereinafter referred to as "Second Privilege Log"). *See* Def.'s Mem. at 3; Pl.'s Mem. at 5-6. Some of the documents in the First Privilege Log were identified by a different number in the Second Privilege Log. Signifi-

cantly, although DuPont Dow provides more specific descriptions of the respective documents in the Second Privilege Log, DuPont Dow does not claim that the First Privilege Log provided inaccurate descriptions of the respective documents.

2. Although plaintiff's motion originally included a request to compel the production of Doc. Nos. 14 and 21 identified in DuPont Dow's Second Privilege Log, at oral argument held on April 12, 2001, plaintiff's counsel withdrew their request for those two documents.

3. DuPont Dow has submitted for *in camera* review the documents which are the subject of plaintiff's present motion.

Dow has stated that it intends to rely upon an opinion of counsel that the '107 patent is invalid to rebut plaintiff's claim of willful infringement, DuPont Dow has "knowingly and intentionally waived any attorney-client and work product protection as to the subject matter of the opinion." *See* Pl.'s Mem. at 4. Plaintiff further contends that DuPont Dow "must produce documents which its own privilege logs have clearly identified as falling squarely within the scope of the waiver." *Id.*

In its memorandum in opposition to plaintiff's motion, DuPont Dow acknowledges that it has waived the privilege as to the subject matter of the aforementioned opinion of counsel. However, DuPont Dow responds that plaintiff's motion "seeks the production of documents for which [the] privilege has not been waived." *See* Def.'s Mem. at 1.

## I. SCOPE OF THE WAIVER

■ In a patent infringement case, if the patent is willfully infringed, increased damages may be awarded. *See* 35 U.S.C. §§ 284 and 285; *Applied Telematics v. Sprint Corp.*, No. 94-4603, 1995 WL 567436, at * 1 (E.D. Pa. Sept. 21, 1995)(citing *Kelsey-Hayes Co. v. Motor Wheel Corp.*, 155 F.R.D. 170, 171 (W.D.Mich.1991)). A charge of willful infringement can be rebutted by proof that the alleged infringer obtained a competent opinion of counsel that the conduct complained of would not infringe the patent in question. *Underwater Devices, Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380, 1390 (Fed.Cir.1983); *Applied Telematics*, 1995 WL 567436, at *1. "Counsel's opinion must be thorough enough, as combined with other factors, to instill a belief in the infringer that a court might reasonably hold the patent is invalid, not infringed, or unenforceable." *Ortho Pharmaceutical Corp. v. Smith*, 959 F.2d 936, 944 (Fed.Cir.1992). Thus, the alleged infringer's intent and reasonable beliefs are the primary focus of a willful infringement inquiry. *Id.*

■ The general rule regarding the voluntary disclosure of privileged attorney-client communications is that the disclosure waives the privilege as to all other communi-

cations on the same subject. *Katz v. AT & T Corp.*, 191 F.R.D. 433, 439 (E.D.Pa.2000). Thus, when a party asserts an advice of counsel defense, it waives the attorney-client privilege with respect to "all communication to and from counsel concerning the transaction for which counsel's advice was sought." *Applied Telematics*, 1995 WL 567436, at * 1 (quoting *Saint-Gobain/Norton Indus. Ceramics Corp. v. General Elec. Co.*, 884 F.Supp. 31, 33 (D.Mass.1995)); *see W.L. Gore & Assoc., Inc. v. Tetratec Corp.*, No. 89-3995, 1989 WL 144178, at *3 (E.D.Pa. Nov.28, 1989).

■ The waiver principle applies to work product immunity as well as to the attorney-client privilege. *Id.* Therefore, where a party asserts the advice of counsel as an essential element of its defense, work product immunity, like attorney-client privilege, is waived with respect to the subject of that advice. *Id.; see Mushroom Assoc. v. Monterey Mushrooms, Inc.*, No. 91-1092, 1992 WL 442892, at *3 (N.D. Cal. May 19, 1992).

As both parties acknowledge, the scope of the waiver is narrowly construed in patent cases. *Katz*, 191 F.R.D. at 440 (citing *Saint-Gobain*, 884 F.Supp. at 34; *Applied Telematics*, 1995 WL 567436, at *2). However, "[c]ourts must also keep in mind that issues of willful infringement are fact questions determined from the 'totality of the circumstances.'" *Kelsey-Hayes Co.*, 155 F.R.D. at 171 (quoting *Shiley, Inc. v. Bentley Labs. Inc.*, 794 F.2d 1561, 1568 (Fed.Cir.1986), *cert. denied*, 479 U.S. 1087, 107 S.Ct. 1291, 94 L.Ed.2d 148 (1987)). Therefore, in this context, courts should fashion their orders compelling the production of documents on a case by case basis consistent with the principles of fundamental fairness. *Kelsey-Hayes Co.*, 155 F.R.D. at 171.

■ In the present case, to rebut plaintiff's charge that DuPont Dow willfully infringed the '107 patent, DuPont Dow states that it obtained and relied on "an oral and later written opinion [of outside patent counsel] stating that the '107 patent was invalid under 35 U.S.C. § 102(f) . . . and 102(g)."[4]

---

4. Title 35 U.S.C. §§ 102(f) and 102(g) provide, in relevant part:

A person shall be entitled to a patent unless —

. . .

(f) he did not himself invent the subject matter sought to be patented, or

. . .

Neither party disputes that a party asserting the advice of its counsel to rebut a claim of willful infringement waives the attorney-client privilege and work product immunity as to the subject matter of the advice.[5] *See, e.g.,* Def.'s Mem. at 4-5; Pl.'s Reply at 5. Where the parties differ is on the scope of the subject matter of the waiver in this case. *See* Def.'s Mem. at 5-8. In particular, plaintiff argues that the scope of the waiver is the subject matter of invalidity of the '107 patent, and DuPont Dow contends that the scope of the waiver should be limited to invalidity of the patent under 35 U.S.C. §§ 102(f) and 102(g) only.

As discussed above, "[w]hen a party asserts an advice of counsel defense, it waives the attorney-client privilege with respect to 'all communications to and from counsel concerning the transaction for which counsel's advice was sought.'" *Applied Telematics,* 1995 WL 567436, at *1; *Saint-Gobain,* 884 F.Supp. at 33 (quoting *Rolls-Royce Ltd. v. GTE Valeron Corp.,* 800 F.2d 1101, 1109 (Fed.Cir.1986)). Here, in a letter dated July 3, 1996, DuPont Dow asked its outside patent counsel to review the '107 patent and provide "an opinion *regarding its validity.*" *See* Letter from M. Bromels to P. Roux, Esq. dated 7/3/96, at 1 (emphasis added).[6] In addition, according to the July 3, 1996 letter, other documents were enclosed with the letter for outside patent counsel's "use in *assessing the validity of [the '107 patent].*" *Id.* (emphasis added). Moreover, DuPont Dow's discovery responses acknowledge that "[a]fter learning of the existence of the '107 patent, in July 1996, DuPont Dow directed its outside patent counsel ... to prepare *an evaluation of the validity of the '107 patent.*" *See* Second Supp. Resp. to Interrog. No. 9 of Plaintiff's First Set of Interrogs. (attached to Pl.'s Mem. as Ex. "4"). Thus, the subject matter on which DuPont Dow sought advice — advice which it ultimately relied on — was the assessment of "the validity of [the '107 patent]." *Id.;* Letter

from M. Bromels dated 7/3/96, at 1; *see Saint-Gobain,* 884 F.Supp. at 34.

The rationale underlying the waiver of the attorney-client privilege in this situation is one of "fairness." *Katz,* 191 F.R.D. at 439; *Applied Telematics,* 1995 WL 567436, at * 3. "A party should not be allowed to rely on self-serving documents in its defense while withholding potentially damaging information under the guise of the attorney-client privilege." *Mushroom Assoc.,* 1992 WL 442892, at *3.

In the present case, the opinion of counsel upon which DuPont Dow claims it relied was given in response to DuPont Dow's request for an assessment of the validity of the '107 patent. It would be "fundamentally unfair" to allow DuPont Dow "to disclose opinions which support its position" on the invalidity of the '107 patent and to "simultaneously conceal those that [may be] unfavorable or adverse to its position." *See Katz,* 191 F.R.D. at 439; *Saint-Gobain,* 884 F.Supp. at 33; *see also Mushroom Assoc.,* 1992 WL 442892, at *3; *Kelsey-Hayes Co.,* 155 F.R.D. at 171. On the other hand, it is not unfair and should not have been unanticipated that the scope of DuPont Dow's waiver is the validity of the '107 patent, when the opinion of counsel relied on was related to the invalidity of the '107 patent and was provided in response to a request for an assessment of the validity of the patent.

Moreover, in support of its position on the subject matter scope of the waiver in this case, DuPont Dow has failed to cite any patent infringement case where a party asserted reliance upon the opinion of counsel as a defense and the court limited the waiver to a subject matter more narrow than whether a patent was valid, not infringed, or unenforceable. *See* Def.'s Mem. at 5-8; *see also Applied Telematics,* 1995 WL 567436, at *3 (limiting the scope of the waiver to the issue

---

(g)(2) before such person's invention thereof, the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it.

**5.** Indeed, DuPont Dow states that "[t]here is no question that [plaintiff] is entitled to documents that relate to the grounds of the subject matter ... set for[th] in the opinions of counsel given by

[DuPont Dow's outside patent counsel] in 1996." *See* Def.'s Mem. at 4-5.

**6.** At the oral argument held on Apr. 14, 2001, plaintiff's counsel revealed that plaintiff was in possession of the July 3, 1996 letter which is identified as Doc. No. 5 in Def.'s Second Privilege Log.

of infringement); *Mushroom Assoc.,* 1992 WL 442892, at *3 (holding that alleged infringer "waived privilege with respect to all documents pertaining to the infringement of [the patent]"); *Saint-Gobain,* 884 F.Supp. at 34 (holding that alleged infringer "waived the attorney-client privilege with respect to the issue of validity"); *cf. Ortho Pharmaceutical Corp.,* 959 F.2d at 944 ("Counsel's opinion must be thorough enough ... to instill a belief in the infringer that a court might reasonably hold the patent is *invalid, not infringed or unenforceable.*" (emphasis added)).

Indeed, in *McCormick-Morgan, Inc. v. Teledyne Industries, Inc.,* 134 F.R.D. 275 (N.D.Cal.1991), a case cited by both parties in the present case, the Court specifically denied the alleged infringer's request to limit "the subject matter scope of its waiver [to] only those specific potential bases for challenging validity or enforceability that [were] the subjects of communications the alleged infringer already had disclosed." *McCormick-Morgan,* 134 F.R.D. at 280, *on reconsideration,* 765 F.Supp. 611, 613 (N.D.Cal.1991) (affirming uncontested portion of Court's Order regarding subject matter scope of waiver, but reversing on portion of Order concerning temporal scope of waiver). Although the Court noted that the alleged infringer made an explicit waiver, the Court also held that limiting the scope of the waiver as narrow as the alleged infringer had requested would be *inconsistent with the case law. Id.*

Similarly, in *Mushroom Associates v. Monterey Mushrooms, Inc.,* the plaintiff argued that the defendants had waived all attorney-client privilege and work product immunity for documents pertaining to the issue of *infringement* of the plaintiff's patent by invoking the advice of counsel defense. *Mushroom Assoc.,* 1992 WL 442892, at *1. The defendants urged the Court to define the scope of the waiver more narrowly, such that the scope of the waiver only extended to "willful infringement." *Id.* The Court stated:

> If the defendants' definition of the scope of willful infringement is simply the September 8, 1989 letter [reflecting the advice of counsel], then the defendants have *narrowed the scope too far....* This court

finds that the defendants have waived the attorney-client privilege with respect to *all documents pertaining to the infringement of the [plaintiff's] patent.*

*Id.* at *4 (emphasis added).

In the present case, where DuPont Dow requested that counsel provide an assessment on the validity of the '107 patent, and DuPont Dow subsequently asserted its reliance upon that opinion of counsel as a defense to plaintiff's charge of willful infringement, DuPont Dow has waived the privilege and immunity with respect to the issue of validity of the '107 patent. *See Saint-Gobain,* 884 F.Supp. at 34; *see also Applied Telematics,* 1995 WL 567436, at *3; *Mushroom Assoc.,* 1992 WL 442892, at *3. However, DuPont Dow is not required to disclose privileged documents relating *only* to the issues of whether the ' 107 patent is not infringed or unenforceable. *See Saint-Gobain,* 884 F.Supp. at 34; *see also Applied Telematics,* 1995 WL 567436, at *3; *Mushroom Assoc.,* 1992 WL 442892, at *3.

Plaintiff also argues that the temporal scope of the waiver extends to the time of trial. *See* Pl.'s Mem. at 11. DuPont Dow responds that plaintiff's request regarding the temporal scope of the waiver is overreaching, and in support of its position DuPont Dow cites cases which limited the temporal scope of the waiver to the date that the civil actions were filed. *See* Def.'s Mem. at 9 (citing *Kelsey-Hayes Co.,* 155 F.R.D. at 172; *Patent Holding Co. v. TG (USA) Corp.,* No. 96-74721, 1998 WL 241203 (E.D.Mich. Jan.29, 1998)).

As plaintiff points out in its reply brief, all of the documents that are the subject of the present motion are dated prior to the filing of plaintiff's Complaint in this case.[7] *See* Pl.'s Reply at 11. Therefore, since even the aforementioned cases cited by DuPont Dow limited the temporal scope of the waiver to the date that the respective lawsuits were filed, the issue of the temporal scope of the waiver in the context of the present motion is moot.

7. The civil docket reflects that the Complaint was filed on June 14, 2000.

## II. SPECIFIC DOCUMENTS WITHHELD BY DUPONT DOW

■ A proper claim of privilege requires a specific designation and description of the documents within its scope as well as precise and certain reasons for preserving their confidentiality. *Allegheny Ludlum Corp. v. Nippon Steel Corp.*, No. 89-5940, 1990 WL 9837, at *1 (E.D.Pa. Feb.1, 1990). Thus, "[i]t is incumbent upon one asserting the privilege to make a proper showing that all of the elements of the privilege are present." *Id.* at *1.

■ One of the elements that the asserting party must prove is that it has not waived the privilege.[8] *Weil v. Investment/Indicators, Research and Mgt., Inc.*, 647 F.2d 18, 25 (9th Cir.1981). Therefore, the party asserting the privilege has the burden of proving its applicability *and non-waiver*. *Nutramax Labs., Inc. v. Twin Labs. Inc.*, 183 F.R.D. 458, 472 (D.Md.1998)(citing *Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir.1998)); *see Katz*, 191 F.R.D. at 437 n. 3.

■ The burden of establishing the elements of the privilege can be met only by an evidentiary showing based on competent evidence and cannot be "discharged by mere conclusory or *ipse dixit* assertions." *Saxholm AS v. Dynal, Inc.*, 164 F.R.D. 331, 333 (E.D.N.Y. Feb.2, 1996); *see Caruso v. Coleman Co.*, No. 93-6733, 1995 WL 384602, at *1 (E.D. Pa. June 22, 1995) (the proponent of the privilege must show by affidavit or other record evidence that precise facts exist as to bring the communication at issue within the narrow confines of the privilege); *CSX Transp., Inc. v. Admiral Ins. Co.*, No. 93-132-10, 1995 WL 855421, at *1 (M.D.Fla. July 20, 1995). Submitting documents to the Court for *in camera* review does not relieve a party from the requirement of submitting affidavits or other evidence in support of the asserted

privilege. *See Caruso*, 1995 WL 384602, at *1; *Diamond State Ins. Co. v. Rebel Oil Co.*, 157 F.R.D. 691, 699 (D.Nev.1994); *see also CSX Transp., Inc.*, 1995 WL 855421, at *4-5.

■ "In contrast, a party asserting work product privilege immunity is not required to prove 'non-waiver.'" *Johnson v. Gmeinder*, 191 F.R.D. 638, 643 (D.Kan.2000) (footnote omitted). Accordingly, the party asserting waiver of work product immunity, rather than the party asserting the work product protection, has the burden of establishing waiver. *Id.; see Aull v. Cavalcade Pension Plan*, 185 F.R.D. 618, 624 (D.Colo.1998)(party asserting waiver of work product immunity has burden of establishing waiver); *Hatco Corp. v. W.R. Grace & Co.*, No. 89-1031, 1991 WL 83126, at *7 (D.N.J. May 10, 1991) ("[P]arty seeking to obtain protected work product bears the burden of proving that the protection has been waived.").

Control of discovery is a matter entrusted to the sound discretion of the trial court. *See Allegheny Ludlum Corp.*, 1990 WL 9837, at *1. Thus, the responsibility of determining whether privilege or immunity exists rests upon the Court and not upon the lawyer whose client claims the privilege or waiver. *Id.*

In the present case, plaintiff's motion focuses on whether DuPont Dow's claimed privilege and immunity were waived. Therefore, with respect to the attorney-client privilege, the dispute turns on whether DuPont Dow has demonstrated that it has not waived the privilege. With respect to work product immunity, the issue is whether plaintiff has established waiver.

Other than the very general descriptions given in the privilege logs and DuPont Dow's unsuccessful claim discussed above that the scope of the waiver should be limited to invalidity under 35 U.S.C. §§ 102(f)

---

8. In order to establish that communications are protected by the attorney-client privilege, the following elements must be present: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his or her subordinate, and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; *and* (4) the privilege has been (a) claimed and (b) *not waived by the client*. *Katz*, 191 F.R.D. at 437 n. 3 (citing *Rhone-Poulenc Rorer v. Home Indem. Co.*, 32 F.3d 851, 862 (3d Cir.1994)) (emphasis added).

and 102(g) only, DuPont Dow has failed to provide any grounds in its opposition to plaintiff's motion for withholding the specific documents requested by plaintiff's motion. Indeed, DuPont Dow acknowledges in its memorandum that "many of these documents [which DuPont Dow has collected] *relate to the invalidity of the '107 patent* on grounds other than § 102(f) and (g)." *See* Def.'s Mem. at 11 (emphasis added).

Thus, DuPont Dow has failed to meet its burden of demonstrating the non-waiver of the privileged documents which plaintiff seeks to compel. In particular, DuPont Dow has failed to demonstrate that the documents which it claims are protected by the attorney-client privilege are not relevant to the issues of validity of the '107 patent. In any event, the Court will proceed to address the specific documents requested by plaintiff to be compelled.

As plaintiff points out in its memorandum and reply in support of its motion, Document Nos. 7, 12, 13, and 17 are described in DuPont Dow's Second Privilege Log as relating to the invalidity of the '107 patent.[9] In addition, as explained above, *see supra* note 6, Document No. 5 in the Second Privilege Log is a letter directly related to DuPont Dow's request for an assessment of the validity of the '107 patent. Accordingly, since DuPont Dow has waived privilege and immunity with regard to the issue of the invalidity of the '107 patent, DuPont Dow has waived any attorney-client privilege and work product immunity with respect to these documents, and these documents must be produced to plaintiff.

Document Nos. 3, 8, and 11[10] are described in the Second Privilege Log as memoranda reflecting legal advice or factual information as a basis for legal advice regarding United States Patent No. 4,713.418 ("the '418 pat-

ent")(attached to Pl.'s Mem. as Ex. "8").[11] According to DuPont Dow's discovery responses, "DuPont Dow believes that the '107 patent is *invalid* because it is anticipated or rendered obvious by at least [the '418 patent] ..." *See, e.g.,* Def.'s Second Supp. Resp. to Interrog. No. 4 of Pl.'s First Set of Interrogs. (attached to Pl.'s Mem. as Ex. "9") (emphasis added). Thus, by DuPont Dow's own admission, the '418 patent is relevant to DuPont Dow's analysis of the validity of the '107 patent, and indeed, the '418 patent is a specific basis for DuPont Dow's assertion that the '107 patent is invalid. *Id.*

Furthermore, in DuPont Dow's July 3, 1996 letter to outside patent counsel confirming that DuPont Dow had asked for an opinion on the validity of the '107 patent, DuPont Dow provided specific information related to the '418 patent to assist outside counsel in formulating a validity opinion. *See* Letter from M. Bromels to P. Roux, Esq. dated 7/3/96, at 1, 3-4. Accordingly, for these reasons and after *in camera* review of these documents, it appears that DuPont Dow has waived any privilege and immunity with regard to Document Nos. 3, 8 and 11 which are relevant to the issue of invalidity of the '107 patent.

Document Nos. 9 and 10 identified in DuPont Dow's Second Privilege Log concern Teflon PFA. Plaintiff states in its memorandum and DuPont Dow does not deny that "Teflon PFA is *expressly* described and discussed in the 1996 Opinion in connection with DuPont Dow's invalidity analysis." *See* Pl.'s Mem. at 18-19 (emphasis added). Furthermore, it appears that DuPont Dow's First Privilege Log describes these documents as "Memo re information for Opinion."[12] Since these documents are relevant to the invalidi-

---

9.  Doc. Nos. 7 and 12 in the Second Privilege Log appear to be identified as Doc. Nos. 15 and 20, respectively, in the First Privilege Log and were originally described as "Memo re information for Opinion."

10. Doc. Nos. 3 and 11 in the Second Privilege Log appear to be identified in the First Privilege Log as Doc. Nos. 6 and 19 and were originally described as "Memo re information gathered for Opinion" and "Memo re information for Opinion," respectively.

11. According to DuPont Dow, Doc. No. 3 in the Second Privilege Log was "improperly designated" as covered by work product immunity. *See* Def.'s Mem. at 11 n.3. DuPont Dow states that Doc. No. 3 should instead be designated as covered by the attorney-client privilege. *Id.*

12. In comparing the two privilege logs, it appears that Doc. Nos. 9 and 10 in the Second Privilege Log are identified as Doc. Nos. 17 and 18 in the First Privilege Log.

ty of the '107 patent, they must be produced to plaintiff.

Document Nos. 20 and 23 in the Second Privilege Log relate to a letter from plaintiff's counsel to DuPont Dow inquiring into the basis underlying DuPont Dow's belief that there was no infringement of the '107 patent. Specifically, Document No. 20 is a letter from DuPont Dow's outside patent counsel to DuPont Dow's in-house counsel regarding a response to plaintiff's inquiries. Document No. 23 is plaintiff's original letter to DuPont Dow containing plaintiff's aforementioned inquiries with a handwritten note from DuPont Dow's counsel. A review of these documents reveals that they contain information directly related to the 1996 Opinion and thus the validity of the '107 patent. Therefore, these documents must be produced to plaintiff.

With respect to Document Nos. 1, 4, 6, 15, 24, and 27, as with all of the documents which are requested by plaintiff's present motion and which DuPont Dow claims are protected by the attorney-client privilege,[13] DuPont Dow has failed to demonstrate their non-waiver by an evidentiary showing, i.e., that these documents do not relate to the issue of validity of the '107 patent.[14] Moreover, after an *in camera* review, Document Nos. 1, 4, 6, 15, 24 and 27 appear to be relevant to the issue of validity of the '107 patent. Therefore, they must be produced.

Document No.18 in the Second Privilege Log is a handwritten note from DuPont Dow's in-house counsel reflecting information "regarding monomer composition of Kalrez." *See* Second Privilege Log. In a letter dated April 5, 2001 from DuPont Dow's outside patent counsel to plaintiff's counsel, DuPont Dow acknowledged that Document Nos. 18 and 17 in the Second Privilege Log "[a]ppl[y] to § 102(f) and (g) but [are] subsequent to the [1996 Opinion] and [are] confirmatory." *See* Letter from P. Roux, Esq. to D. Callet, Esq.

dated 4/5/01, at 1 (attached to Pl.'s Reply as Ex. "A"). As explained above, 35 U.S.C. §§ 102(f) and 102(g) relate to the validity of a patent and are specific grounds upon which the 1996 Opinion rely in claiming that the '107 patent is invalid. Furthermore, the April 5, 2001 letter also acknowledges that Document Nos. 18 and 17 are "confirmatory of the ideas and opinions expressed by [DuPont Dow's outside patent counsel] in 1996." *Id.* Thus, Document Nos. 18 and 17 relate to the 1996 Opinion and the validity of the '107 patent. Accordingly, Document No. 18 must be produced to plaintiff.[15]

With respect to Document No. 2 in the Second Privilege Log, DuPont Dow claims that this documents is protected by work product immunity. The Second Privilege Log describes Document No. 2 as "Handwritten Fax Memo reflecting request for legal advice re: E.I. duPont PCT application corresponding to '189 Patent." In the aforementioned April 5, 2001 letter from DuPont Dow's outside counsel to plaintiff's counsel, counsel describes this document as "Appl[ying] to the '189 patent prosecution." After reviewing this document, Document No. 2 appears relevant to the issue of validity of the '107 patent. Therefore, plaintiff's motion to compel is granted with respect to Document No. 2.

Document No. 19 in the Second Privilege Log is described in the log as a "Handwritten note reflecting legal advice concerning potential pre-litigation strategy." An *in camera* review reveals that this document appears to be exactly as described in the log and does not appear to be relevant to the issue of validity of the '107 patent. Accordingly, DuPont Dow need not produce this document.

Document No. 22 which is dated April 13, 2000 is described in the Second Privilege Log as "Handwritten notes reflecting information gathered at request of attorney for providing

---

**13.** As with Doc. No. 3, *see supra* note 11, DuPont Dow states that Doc. No. 4 in the Second Privilege Log was "improperly designated" as covered by work product immunity. *See* Def.'s Mem. at 11 n.3. DuPont Dow states that Doc. No. 4 should instead be designated as covered by the attorney-client privilege. *Id.*

**14.** It is noted that the documents identified as Nos. 1, 4, 6 and 15 in the Second Privilege Log

appear to be identified as Document Nos. 2, 7, 12 and 28, respectively, in the First Privilege Log, and the description for each of these documents in DuPont Dow's First Privilege Log indicates that they relate to "information gathered for Opinion."

**15.** Of course, Doc. No. 17 in the Second Privilege Log has been addressed *supra* and must also be produced.

legal advice relating to cure site monomers." The aforementioned April 5, 2001 letter from DuPont Dow's outside patent counsel to plaintiff's counsel states that this document "[a]pplies to potential damages and infringement issues." *See* Letter from P. Roux, Esq. to D. Callet, Esq. dated 4/5/01, at 2. After *in camera* review, this document does indeed appear to be related to the issues of damages and infringement and not the validity of the '107 patent. Therefore, plaintiff's motion to compel is denied with respect to Document No. 22.

Document No. 25 in the Second Privilege Log is described in the log as "Letter/Spreadsheet reflecting information prepared in support of patent application." Document No. 26 is described in the Second Privilege Log as "Memo including list of prior art relating to DuPont patent covering Kalrez products for patentability analysis." The April 5, 2001 letter from defendant's outside counsel states that both of these documents "[a]ppl[y] to [the] '189 patent prosecution." *Id.* In its reply brief, while plaintiff acknowledges that it does not know enough about Document Nos. 25 and 26 to assert that DuPont Dow has waived the privilege with respect to these documents, plaintiff argues that "[t]o the extent these documents may bear on understanding of the prior art and/or claim interpretation, particularly via prosecution of the '189 patent, [plaintiff] submits that [these documents] ... are relevant to evaluation of the reasonableness of DuPont Dow's reliance" on the 1996 Opinion of counsel. *See* Pl.'s Reply at 21.

A review of these documents reveals that Document No. 26 does in fact relate to prior art which appears to be relevant to the issue of the validity of the '107 patent, and Document No. 25 contains test data which does not appear to be relevant to the validity of the '107 patent. Accordingly, plaintiff's motion to compel is granted with respect to Document No. 26 but is denied with respect to Document No. 25.