**CHIRON CORPORATION, Plaintiff,**

v.

**GENENTECH, INC., Defendant.**

**No. CIV S–00–1252WBSGGH.**

United States District Court,
E.D. California.

Dec. 10, 2001.

Eric S. Walters, Rachel Krevans, Morrison and Foerster LLP, San Francisco, CA, for Chiron Corporation.

Jack Vivian Lovell, Hunter Richey DiBenedetto and Brewer, Sacramento, CA, James M. Emery, Henry C. Bunsow, Keker and Van Nest, San Francisco, CA, for Genentech.

## ORDER

HOLLOWS, United States Magistrate Judge.

On December 6, 2001, the parties, by and through their counsel, were heard in connection with Chiron's motion to compel further production of documents related to the advice of counsel defense asserted by Genentech. Counsels' appearances were identified on the record.

*Introduction and Summary*

One of the defenses raised in the instant litigation (hereafter the '561 patent)[1] is advice of counsel. This defense pertains to Chiron's claim that Genentech willfully infringed the '561 patent. Genentech agrees that it has waived attorney-client privilege and work product immunity because of its affirmative defense; the issue disputed is the scope or extent of the waiver. Subsidiary disputes involve the completeness of Genentech's privilege log; however, these disputes will be resolved (to a large extent) by the court's specific rulings on the extent of Genentech's waiver.

After thorough consideration of the parties' positions, and in light of the analysis below, the court finds that Genentech shall produce (to the extent that it has not already done so):

1. All documents reflecting communications, including those otherwise encompassed by the attorney-client privilege, to and from Knobbe regarding the infringement/validity analysis of the '561 patent (September 2000 letter), up through and including the present time;

2. All documents reflecting communications to and from Knobbe regarding the infringement/validity analysis of the '894 patent (December 1998 letter) up through and including the present time;

3. All documents reflecting communications to and from the Lyon law firm on the subject of the advice given in the Lyon letter referenced in the '894 patent letter discussion up through and including the present time;

4. All documents which Genentech presented, forwarded, or caused to be given to its advice attorneys Knobbe and Lyon for the purpose of acquiring an opinion whether Genentech infringed the '561 patent, the '894 patent, and the patent(s) pertinent to the Lyon letter, or whether the '561 patent, et. al., was valid;

5. (To the extent not already produced in accordance with paragraph 4 above) all documents relied upon by Knobbe and Lyon and disclosed to Genentech in performing the three referenced infringement/validity analyses (the communicated work product);

6. (To the extent not already produced in accordance with paragraph 4) all documents which Knobbe and Lyon otherwise

---

1. Although Chiron's related '894 patent is at issue in CIV–S–01–503 WBS GGH, and it appears that advice of counsel is being asserted as a defense to willful infringement in that action, this motion is directed only at the advice of counsel defense asserted in the '561 action. Nevertheless, as the discussion indicates, privilege associated with the '894 patent and the patents analyzed in the Lyon letter have been waived in connection with the '561 litigation.

reviewed in performing the three referenced infringement/validity analysis which Knobbe and Lyon did not disclose to Genentech (the uncommunicated work product);

7. All Genentech privileged documents in the actual or constructive possession of Genentech which expressly refer to the three infringement/validity analyses referenced above, to the extent not produced in accordance with the above paragraphs, up through the present time, regardless of whether those documents would otherwise be encompassed by the attorney-client privilege or work product immunity; Genentech shall also produce those attorney-client communication or work product documents within Genentech files, which expressly indicate[2] an opinion or conclusion pertinent to the infringement/validity of the '561 or '894 patents; the documents to be produced include those based in whole or in part on the Drebin, Greene work referenced in the September 2000 advice letter, or based in whole or in part on the Carter publication and Hudziak patent ('171); the documents to be produced include any University of Pennsylvania licensing documents[3] which expressly indicate an opinion or conclusion pertinent to the infringement/validity of the '561 or '894 patents.

Genentech need not produce as part of its advice of counsel disclosure:

1. Documents related to other of Genentech's, Chiron's, or third party patents, but only to the extent not encompassed by production paragraphs 1–7 above;

2. Any communications or work product created by Genentech's present litigation counsel of record in this action, despite their being encompassed by the production paragraphs above, as Chiron expressly disclaimed at hearing any request for documents from counsel of record.

Genentech need not further publish a privilege log pertinent to the advice of counsel defense. Moreover, the court declines at this time to perform a document by document review of presently withheld materials (*see* exhibits attached to joint statement). The court's directions have been specific enough to obviate such a discussion. If particular documents remain at issue despite these directives, the number of such disputes should be few and manageable for a later motion.

*Facts*

On September 28, 2000, the law firm of Knobbe, Martens, Olson & Bear sent an opinion letter (authored by Ned A. Israelsen) to Genentech advising that, in its opinion, Chiron's '561 patent was invalid. Knobbe also opined that "Genentech's Herceptin antibody, as disclosed to us, does *not* infringe any of claims 1–31 of the 561 patent." Exhibit 5 at p. 2. Fifty-two pages of complex analysis followed setting forth support for the general opinion rendered in the first two pages of the letter. The present motion does not require a detailed discussion of the analysis. However, the analysis referenced in part a prior, and similarly lengthy, opinion letter

**2.** "Expressly indicate" means a factual reference, or scientific or legal opinion/conclusion applying the facts in this case, appearing in a Genentech privileged document, which is contrary to, or in support of, any opinion or conclusion set forth in the September 2000 letter, or December 1988 letter, whether or not the factual reference or scientific or legal opinion/conclusion expressly references the aforementioned letters or the '561 or '894 patents. The court expects that only attorney-client or work product documentation has been withheld to this point.

**3.** No party has to date expressed confusion over what is referred to by "the University of Pennsylvania licensing documents."

issued by Knobbe concerning Genentech's potential for infringement of the '894 patent. That opinion letter related that Chiron's '894 patent was invalid for various reasons, and that "Genentech's humanized p185 HER2 antibody does not infringe any of the claims of the '894 patent." Exhibit 5 (December 14, 1998 letter) at p. 5. The December 14, 1998 opinion letter also reviewed and relied upon a prior opinion letter issued by the law firm of Lyon & Lyon. *Id.* at p. 1.

Genentech advanced an advice of counsel defense in the '561 case. Chiron claims that Genentech thereby waived privilege and work product immunity not only with respect to the letters themselves, but also including a multitude of related documents. Categorically, Chiron seeks all documents "that are directly related to the Knobbe opinions," "that relate to other legal advice it received on the subject matter addressed in the Knobbe opinions," including those documents related to Genentech's prosecution of the Drebin/Greene Application and "its prosecution of a series of Genentech patents relating to Herceptin."

Genentech takes a much narrower view of the scope of waiver occasioned by assertion of the advice of counsel defense. Aside from copies of the opinions themselves, it asserts that "all materials actually communicated to it from [Knobbe] that pertain to the relevant subject matter, and all internal [Genentech] documents referring to the 2000 Opinion or analyzing the '561 patent," are the total of documents required to be produced to Chiron as a result of the purposeful waiver.

*Discussion*

A. *The Advice of Counsel Defense in Patent Litigations*

The extent of waiver of attorney-client and work product materials can only be understood by reviewing the parameters of the advice of counsel defense. If a patentee asserts that a competitor *willfully* infringed its patent, the competitor may avoid the extraordinary sanctions of a willful infringement by reliance on its counsel's advice. However, the reliance of the competitor must be reasonable and in good faith. "A critical factor in evaluating the effect of an opinion of counsel on willfulness is the reasonableness of a party's reliance thereon." *Stryker Corp. v. Davol Inc.,* 234 F.3d 1252 (Fed.Cir.2000) *quoting Graco Inc. v. Binks Mfg. Co.,* 60 F.3d 785, 793 (Fed.Cir.1995). Thus, the focus of the defense is the state of mind of the competitor-client and not the attorney's state of mind. While it is true that the legal correctness per se of the opinion will not be at issue in the defense, " '[C]ounsel's opinion must be thorough enough, as combined with other factors, to instill a belief in the infringer that a court might reasonably hold the patent is invalid *or* unenforceable.' " *Graco,* 60 F.3d at 793 (emphasis added by the *Graco* court). Reasonableness is not analyzed without taking into account the circumstances of the client— the more sophisticated the client, the more stringent the duty of inquiry on the part of the client. That is, reasonableness from the standpoint of an individual lay business person may be different from that of the client comprised, in part, of sophisticated patent attorneys. *Eli Lilly & Co. v. Zenith Pharm. Inc.,* 2001 WL 1397304 *25 (S.D.Ind.2001) (basing the reasonableness inquiry, in part, on the sophistication of the client).

B. *General Principles of Waiver of Attorney–Client and Work Product Information When Asserting an Advice of Counsel Defense*

As observed in previous opinions, the district court in a patent litigation shall apply Federal Circuit law when resolving discovery issues that occur in the unique

context of patent litigation. However, the advice of counsel defense is asserted in many litigation contexts, and its general principles universally apply. While application of those principles in a patent litigation may require reliance on Federal Circuit law, the Federal Circuit has been silent on the discovery issue of the extent of attorney-client/work product waiver primarily because such discovery issues have not surfaced in post-trial appeals to the knowledge of the parties or the undersigned. Thus, this court will draw from established attorney-client case law from the Supreme Court, Ninth Circuit, other circuit, and district court decisions in patent cases.

Privileges and immunities from discovery (hereafter collectively "privileges") are an impediment to the truth seeking process. Courts have time and again cautioned that privileges are to be narrowly construed so as to not unduly impede the primary function of courts-decisions on the fullest, most accurate record possible. *Jaffee v. Redmond,* 518 U.S. 1, 9, 116 S.Ct. 1923, 1928, 135 L.Ed.2d 337 (1996). While privileges serve a useful purpose in our adversary system, they should not exceed their legitimate raison d'etre. In similar vein, where the law demands a waiver of privileges, the scope of the waiver should not be unduly circumscribed. Thus, the court is not inclined to view the scope of the waiver in this case in a fashion that would unfairly keep information from the factfinder which is both relevant and sufficiently related to the issues discussed in the opinion letter. On the other hand, subject matter of the waiver is not to be so broadly construed that the advice of counsel defense necessarily becomes a vehicle for the waiver of all privileges in the case.

C. *Determining the Scope of Waiver (Both Breadth and Timing)*

■ Starting with waiver of the attorney-client privilege[:]

courts have found the injection of the advice of counsel to waive "the attorney-client privilege as to communications and documents relating to the advice." *Handgards, Inc. v. Johnson & Johnson,* 413 F.Supp. 926, 929 (N.D.Cal.1976). The scope of the waiver is governed by a rule of fairness. *Id.* Fairness dictates that a party may not use the attorney-client privilege as both a sword and a shield. *Chevron Corp. v. Pennzoil Co.,* 974 F.2d 1156, 1162 (9th Cir.1992) (finding implicit waiver of privilege where defendant claimed to have relied on advice of counsel). A party, therefore, may not selectively disclose privileged communications that it considers helpful while claiming privilege on damaging communications relating to the same subject. *Handgards,* 413 F.Supp. at 929. A court ultimately must be guided by "the subject matter of the documents disclosed, balanced by the need to protect the frankness of the client disclosure and to preclude unfair partial disclosures." *Starsight Telecast, Inc. v. Gemstar Development Corp.,* 158 F.R.D. 650 (N.D.Cal.1994) (internal quotations omitted).

*SNK Corp. v. Atlus Dream Entertainment,* 188 F.R.D. 566 (N.D.Cal.1999).

*See also Inmuno Vital Inc. v. Telemundo Group, Inc.,* 203 F.R.D. 561, (S.D.Fla. 2001); *Greene, Tweed of Del. v. DuPont Dow Elastomers,* 202 F.R.D. 418, 420 (E.D.Pa.2001) ("[C]ourts should fashion their orders compelling the production of documents [in an advice of counsel context] on a case by case basis consistent with the principles of fundamental fairness"); *Saint–Gobain/Norton etc. v. General Electric Co.,* 884 F.Supp. 31, 33 (D.Mass.1995). "[T]he scope [of waiver] must of necessity be somewhat broad and is, in fact, a 'sub-

ject matter' waiver—i.e., a waiver of all communications on the same subject matter." *Micron Separations, Inc. v. Pall Corp.*, 159 F.R.D. 361, 363 (D.Mass.1995).

■ In the present case, Genentech agrees that it "has waived the attorney-client privilege as to documents and information it received or generated on the subject matter in question: whether Herceptin infringes the asserted claims of the '561 patent, and whether those claims are invalid and unenforceable." Nevertheless, in the context of this case, this waiver extends to communications regarding the '894 patent and the patents discussed in the Lyon letter. The attached December 1998 opinion regarding the '894 patent clearly serves as a basis, in part, for the September 2000 opinion—"This analysis ['561 patent] is provided as an *addendum* to our previous analysis ['894 patent]." Exhibit 5 at 2 (emphasis added). *See also* Exhibit 5 at 28 incorporating by reference a discussion in the December 1998 opinion letter. Furthermore, as pointed out at hearing, Genentech produced *both* the September 2000 and December 1998 advice letters to Judge Shubb as those letters comprising their advice of counsel defense in *this* (the '561 patent) action. RT (October 10, 2000) at 13, 15, 19. *See also* order of October 19, 2000 at 7 (Genentech provided *two* opinion letters as the basis of its advice of counsel defense in this action). Thus, the discussion in the attached December 1998 letter is simply too related to the facts of the '561 patent to draw a conclusion that the '894 discussion is not pertinent to the '561 patent discussion. Similarly, the December 1998 letter ('894 patent) also states: "Finally, after completing our analysis, we also considered the invalidity and non-infringement opinions prepared by . . . Lyon and Lyon. Based on our review. . . ." Exhibit 5, December 1998 letter, at 1. Genentech cannot

argue that the express words of the December 1998 letter mean something other than that the Lyon letter played a part in the analysis that is ultimately pertinent to reliance on the September 2000 letter.

■ Moreover, the waiver herein also extends to opinions/communications directed to the subject matter of the three opinion letters expressed by and to Genentech from counsel not presently identified. "As a result [of assertion of advice of counsel], a party must produce not only other communications and opinions of the same attorney, but also privileged information from other counsel involving the same subject." *Beneficial Franchise Co. v. Bank One*, 205 F.R.D. 212 (N.D.Ill.2001). In this case the 1998 Knobbe opinion letter has been disclosed, but apparently, not other communications related to it. Genentech must also produce the opinion letter(s) and associated communications by the Lyon law firm as that opinion is referenced and incorporated in the 1998 letter which, in turn, is referenced by the Knobbe September 2000 opinion letter. Genentech must produce attorney-client communications pertinent to any counsel (except litigation counsel of record) involved in setting forth a communication expressly indicating (*see* footnote 2, *supra*) an opinion or conclusion on the subject matter of the '561 or '894 patents.

At hearing, the parties argued at length concerning the court's tentative views that the waiver encompassed a more limited universe of communications, i.e., only those communications which directly expressed an "opinion on the advice letters opinion" rather than the subject matter of the advice letters. After further consideration, the court has expanded its views. For example, the September 2000 advice letter relies heavily on the Drebin, Greene patent applications and scientific study as prior art etc. which invalidates the '561 patent.

Exhibit 5 at 4, 9, 29, 30, 38, 39, 42, 43. Thus, Chiron should be permitted access to communications that "expressly indicate" (*see* footnote 2, *supra*) opinions or conclusions at odds with Knobbe's reliance on the Drebin, Greene studies, including opinions or conclusions, if any, that indicate that at one time the Drebin, Greene work (whose patent application rights were purchased by Genentech) did not anticipate the claims later set forth in the '561 patent.

██ It is not clear from Genentech's argument in the papers presented whether it has provided attorney-client documents that post-date the Knobbe September 2000 opinion letter. Genentech only speaks in broad terms concerning the privileged documents produced: "all materials actually communicated to it from counsel ... and all internal documents referring to the 2000 Opinion or analyzing the '561 patent." Joint Statement at 24. While there is some authority that cuts off the waiver at time of the filing of the action, the better authority requires that *all* communications, both pre and post-complaint filing, should be disclosed.

The Court believes that the approach in *Starbucks Corp.* is preferable to the "bright line" cutoff used in *Dunhall* based on the date that suit was filed. The overriding principle is one of fairness. When a party chooses to inject into the case attorney opinions, fairness is served by allowing the opposing party to have access to documents casting doubt or contradicting those opinions-even if prepared by trial counsel after suit was commenced. Moreover, we believe that that is consistent with what a party's expectation should be if he or she chooses to inject attorney advice into the case-a party cannot fairly expect to offer only the privileged information which he or she deems helpful, and to withhold the rest.

*Beneficial, supra* 218.

*See also Mosel Vitelic Corp. v. Micron Tech.*, 162 F.Supp.2d 307, 314 (D.Del.2000) (noting that facts of willful infringement may include events taking place during the litigation itself).[4]

The court further observes that the instant litigation is not about a one-time patent infringement. Rather, Chiron asserts that Herceptin infringes its patent to this day, and damages will be assessed, if at all, for a period of time at least through trial. Therefore, Genentech's state of mind throughout trial, i.e., the reasonableness of its reliance on the advice of counsel, is pertinent throughout the litigation. Therefore, if Genentech has received, or presently receives, advice that its reliance on the Knobbe letter is misplaced, from whatever attorney source (except present litigation counsel of record as agreed by the parties), that information is fairly disclosed to Chiron.[5]

██ The parties herein do not dispute the fact that work product is also waived when advice of counsel is sought, *see Greene, Tweed of Del. v. DuPont Dow Elastomers*, 202 F.R.D. at 420, but the rationale of work product immunity, not

---

4. The court specifically rejects the holding of cases insofar as they find that the temporal scope of the work product waiver necessarily ends with the filing of the litigation. *See Dunhall Pharm. v. Discus Dental*, 994 F.Supp. at 1206 (C.D.Cal.1998). Those cases presume that nothing that transpires during litigation should be pertinent to the client's state of mind. This presumption is not in accord with the reality of litigation.

5. The court does not hold that litigation counsel opinion would necessarily be immune from discovery. However, the court will not upset the agreement of the parties on this issue.

identical with attorney-client concerns, requires a separate scope of the waiver analysis. Several cases hold that since an assertion of advice of counsel only implicates the state of mind of the client, the work product of the advising attorney to be disclosed is that communicated to the client. *See Nitinol Medical Tech. v. AGA Med. Corp.*, 135 F.Supp.2d 212, 218 (D.Mass.2000) ("Unless it can be established that the defendant knew of the factual basis for counsel's opinions, such work product should not have to be produced ... here. The inquiry should focus on what AGA knew about its counsel's 'independence, skill and competence to provide the opinions, what [AGA] knew about the nature and extent of analysis performed by the firm, and what [AGA] knew and had concluded about the credibility, value and reasonableness of the opinion.'"); *see also Steelcase Inc. v. Haworth*, 954 F.Supp. 1195, 1198 (W.D.Mich.1997).

However, numerous cases find to the contrary.

Certainly it would not be rational to assume that everything in counsel's files reached the client, or that counsel communicated to the client all of what he or she really thought, but it would be comparably irrational to assume that there could be no relationship between what counsel really thought (as reflected in her private papers) and what she in fact communicated to her client. In this important sense, evidence about what really was in the lawyer's mind could be quite relevant to the issue of what really was in the client's mind.

Moreover, it is impossible to foresee all the kinds of evidence that might be found in the kind of work product documents that are in issue here (i.e., documents that do not directly reflect or advert to communications with the client), or all the kinds of ways that the contents of such documents might be used to shed reliable light on the issue of whether the defendant received additional opinions (perhaps orally) that were inconsistent with the opinions reflected in the disclosed opinion letter. So, because we can foresee at least one way in which such private documents might be highly probative on the issue of what really reached the mind of the client, and because it certainly is possible that there are other ways such documents might contribute in important ways to determining the truth about the state of mind of the client, it would be unfair, at least absent a compelling countervailing interest, to cut-off access to evidence and leads of this kind.

*Electro Scientific Indus. v. General Scanning, Inc.*, 175 F.R.D. 539, 545–46 (N.D.Cal.1997). *See also Mosel Vitelic Corp.*, 162 F.Supp.2d at 311–312 (rejecting narrow waiver of work product); *Greene, Tweed of Del.*, 202 F.R.D. at 422 (same); *Dunhall Pharm., Inc. v. Discus Dental Inc.*, 994 F.Supp. 1202, 1204 (C.D.Cal.1998) (adopting a broader than admissibility waiver of work product information to avert hiding the ball); *Cordis Corp. v. SciMed Life Systems*, 980 F.Supp. 1030, 1033 (D.Minn.1997) (emphasizing need for full disclosure of work product in order to correctly assess the advice of counsel defense); *Mushroom Assoc. v. Monterey Mushrooms Inc.*, 1992 WL 442892 (N.D.Cal.1992) (an often cited case recognizing a broader waiver of work product). In view of the need to decide this case on the fullest, most accurate record possible, the court finds the cases requiring the disclosure of uncommunicated work product to be persuasive.

In sum, invoking the advice of counsel defense is not a painless decision or a free lunch. There are discovery consequences to such an assertion. Fairness requires

that a party who seeks to be absolved of willful infringement because it relied on counsel's advice pay the discovery price. The party asserting the defense waives attorney-client privilege and work product immunity to the broadest extent consonant with *direct* relevance to the advice of counsel itself.

### D. *Miscellaneous Matters*

Chiron has asked that Genentech supplement its privilege log on account of Genentech's stingy view of the scope of the waiver occasioned by assertion of the advice of counsel defense. However, such should not be necessary at this time. Regardless of claimed privilege, those documents falling within the production directive of this court need not be identified on a log pertinent to the advice of counsel defense because the documents will be produced. If the documents fall without the court's directive, no identification need be made because they are not relevant to the advice of counsel inquiry. It may well be that documents which the court has not required to be produced must *still* be identified in a log because of other discovery requests for which the privileged documents would be relevant; nevertheless, those disputes are not before the court, and the court will presume at this juncture that privilege logs pertinent to those requests are accurate.

### *Conclusion*

Chiron's motion to compel is granted as explained in this order. Any request for reconsideration made to the district judge shall be made, if at all, no later than December 17, 2001.