**AKEVA L.L.C., a North Carolina Corporation, Plaintiff,**

v.

**MIZUNO CORPORATION, a Japanese Corporation; and Mizuno USA, Inc., a George Corporation, Defendants.**

**No. 1:00–CV–978.**

United States District Court, M.D. North Carolina.

Jan. 30, 2003.

See, also, 2002 WL 31856682.

William C. Connor, Scott Andrew Schaaf, Tuggle Duggins & Meschan, P.A., Greensboro, NC, Patrick J. Flinn, Alston & Bird, Atlanta, GA, for plaintiff.

James Jason Link, John Steven Gardner, Kilpatrick Stockton, L.L.P., Winston-Salem, NC, Douglas D. Salyers, Troutman Sanders, Atlanta, GA, for defendants.

### ORDER

ELIASON, United States Magistrate Judge.

The matter before the Court is an increasingly familiar one in patent litigation. Plaintiff Akeva L.L.C. ("Akeva") alleges defendants Mizuno Corporation and Mizuno USA, Inc. ("Mizuno") have infringed two patents covering athletic shoes containing flexible plates in the heel in order to improve cushioning and stability. Defendants deny infringement, but should they lose on the issue, they contend any infringement was not willful because they relied on advice of counsel. Consequently, plaintiff wants defendants to reveal all the attorney opinions they received relating to the patent.

Defendants became aware of plaintiff's patent claims, at the latest, when they received a letter from plaintiff in May 2000. There were unsuccessful settlement discussions and the instant lawsuit was filed on September 27, 2000. Apparently, settlement discussions continued after the filing of the lawsuit because defendants indicate that, only after settlement discussions finally broke down in October 2000, did they contact Mr. Dalbert Shefte, in order to obtain his professional opinion concerning the Akeva patents. Mr. Shefte is a patent attorney not connected with either defendants or their litigation attorney. He rendered his opinion on January 8, 2001, apparently limiting it to an opinion that defendants' athletic shoes did not infringe either of the two patents.

Plaintiff deposed Mr. Shefte. They learned that defendants' trial counsel retained Mr. Shefte to obtain the opinion. In fact, there was never any direct contact by Mr. Shefte with defendants except through the opinion letter sent to Robert Puccini, President of Mizuno USA.

Plaintiff also deposed Mr. Puccini, defendants' Rule 30(b)(6) witness, concerning defendants' reliance on the advice of counsel in initially manufacturing and continuing to manufacture the shoes. Mr. Puccini testified that defendants not only relied on Mr. Shefte's opinion, but also that of Gerald Boss, one of their present litigation attorneys. Mr. Puccini necessarily had to admit that he relied on trial counsel for advice until he received Mr. Shefte's opinion letter. However, he also acknowledged that even after receiving Mr. Shefte's letter, he relied, in part, on the

advice of his trial counsel in continuing the manufacturing actions of defendants.

On direction by counsel, Mr. Puccini refused to answer any questions concerning advice he may have received from Gerald Boss. Plaintiff asserts it is entitled to know about all advice received by defendants and not just Mr. Shefte's opinion. Plaintiff also claims that defendants refused to turn over documents concerning "any analysis of the infringement, validity or enforcement" of the patents, relating to the defense of willful infringement and "any other challenge to the validity" of the patents.

Plaintiff contends that it is entitled to all communications on the subjects of patent validity and infringement, including those of the trial counsel and his firm, and that defendants should produce Attorney Gerald Boss for deposition. According to plaintiff, by relying on advice of counsel, defendants waived attorney-client privilege to communications with all attorneys [1] and waived all work product protection as well. Because defendants only proffer Mr. Shefte's opinion letter in support of their defense, they claim that plaintiff is only entitled to receive Mr. Shefte's opinion and his documents. Defendants aver that they

have satisfied their obligation under this restricted disclosure standard, and request that the motion be denied.

### Discussion

In patent litigation, the instant scenario, with variation, is ever present. It arises because of the nature of the dilemma, starting with the rule that damages may be trebled by finding that the infringement of the patent was willful. 35 U.S.C. § 284.

The Federal Circuit, which has exclusive jurisdiction over patent appeals, has determined that "a patentholder proves willfulness by presenting clear and convincing evidence that the infringer acted in disregard of the patent and had no reasonable basis for believing that it had a right to engage in the infringing acts." John Dragseth, *Coerced Waiver of the Attorney–Client Privilege for Opinions of Counsel in Patent Litigation*, 80 Minn. L.Rev. 167, at 172 (1995). Willful infringement is determined under the totality of the circumstances test. *Id.* at 173. One of the more important factors of the totality of the circumstances test is whether the alleged infringer obtained a competent opinion from counsel. *Id.* However, there are a variety of other factors that go into the equation.[2]

---

1. Plaintiff argues that the Shefte opinion is defective for several reasons. First, it alleges that he "grudgingly acknowledged misreading the patent file history." (Plaintiff's Brief at 4) Also, plaintiff contends that the Shefte opinion was based on a more restrictive scope of patent claims based on a Federal Circuit decision relating to the doctrine of equivalence, which opinion was subsequently reversed by the United States Supreme Court. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 234 F.3d 558 (Fed.Cir.2000) (en banc), *rev'd*, 535 U.S. 722, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002). Plaintiff states that Mr. Shefte never updated his opinion in light of the change in controlling law. Therefore, plaintiff suspects that defendants must be relying on the advice of trial counsel, which may be at odds with Mr. Shefte's opinion.

2. These factors include: evidence of intentional copying of the invention; whether the infringer conducted a prior investigation of the scope of the patent claims; whether the patent issued before the acts of infringement; whether the infringer attempted to conceal its acts; whether, and to what extent, the infringer took remedial actions; whether the infringer made a good faith attempt to "design around" the patented invention; whether the infringer held a good faith basis for believing its acts were legitimate; the circumstances surrounding license negotiations; the infringer's behavior as a party to the litigation; the infringer's size and financial condition; and the closeness of the case on the issues of validity, infringement and willfulness. [footnotes omitted]
John Dragseth, *Coerced Waiver of the Attorney–Client Privilege for Opinions of Counsel in*

The Federal Circuit has characterized the process as an analysis to determine whether the alleged infringer exercised due care. The potential infringer "has an affirmative duty of due care that normally requires the potential infringer to obtain competent legal advice before infringing or continuing to infringe ...." *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1572–73 (Fed.Cir. 1996) (quoting, *Underwater Devices, Inc. v. Morrison-Knudsen, Co., Inc.*, 717 F.2d 1380, 1389–90 (Fed.Cir.1983)). Notwithstanding this affirmative duty, willfulness is not determined by a *per se* rule, but rather by an actor's intent which may be revealed and inferred from all of the circumstances. *Gustafson, Inc. v. Intersystems Industrial Products, Inc.*, 897 F.2d 508, 510–511 (Fed.Cir.1990). Because the intent must be reasonable, this determination includes both subjective and objective elements. *See* Dragseth, *supra*, 80 Minn. L.Rev. at 173, and n. 3, *supra*.

As noted previously, one very important objective component of the test is whether a potential infringer obtained competent legal advice as opposed to some incompetent, frivolous or incomplete opinion. *Jurgens*, 80 F.3d at 1572–73. Furthermore, starting in 1984, the Federal Circuit adjusted the burden with respect to proof of infringement. It held that upon notification of a possible infringement, a potential infringer normally has an obligation to obtain competent legal advice before proceeding or continuing to proceed. Dragseth, *supra*, 80 Minn. L.Rev. at 175. Again, this is not a *per se* rule, but one disregards it at some peril. *Id.* The opinion of counsel need not be legally correct, but the Federal Circuit has developed a number of tests for determining whether reliance on the opinion was reasonable.[3]

In 2001, the Federal Circuit made clear that neither infringement nor the exercise of due care was a static concept. Thus, merely because a party obtains knowledge of a patent only by the filing of a lawsuit, that does not excuse it from thereafter exercising due care. The failure to obtain competent legal opinion of non-infringement or invalidity permits a finding that the infringer failed to exercise due care and, therefore, may be found guilty of willful infringement. The court specifically noted that "defenses prepared for trial are not equivalent to the competent legal opinion of non-infringement or invalidity which qualify as 'due care' before undertaking any potentially infringing activity." *Crystal Semiconductor Corp. v. TriTech Microelectronics Intern., Inc.*, 246 F.3d 1336, 1352 (Fed.Cir.2001). In *Crystal*, the Federal Circuit clearly emphasizes the importance of obtaining competent legal opinions and may well indicate a preference for independent opinions from non-litigation counsel.[4]

---

*Patent Litigation*, 80 Minn. L.Rev. 167, at 173–74 (1995).

3. While the importance of the opinion does not wholly depend on its legal correctness, it must be thorough enough, when combined with the other factors of the "totality of the circumstances" test to instill a belief in the accused infringer that a court might reasonably find the patent invalid, not infringed, or unenforceable. The Federal Circuit has repeatedly looked to the substance of the opinion of counsel in this regard. The opinion should be that of a patent attorney rather than a general attorney. The opinion should be in writing, include an analysis for each

claim of the patent at issue, and be based on a diligent search of the prior art and a review of the application's prosecution history. An infringement opinion should include an analysis of both literal infringement and infringement under the doctrine of equivalents. More importantly], the infringer must supply its counsel with all pertinent facts, follow the opinion, and not pick and choose from several opinions. [footnotes omitted]

Dragseth, *supra*, 80 Minn. L.Rev. at 175–77.

4. In patent litigation, there is a temptation for the client to use trial counsel as their opinion counsel. From the client's viewpoint, the best attorney to provide an opinion will most

With this preface, the Court turns to the instant case where both attorney-client privilege and work product protection are present as separate issues. The motion to compel involves both deposition testimony and documents. By its nature, deposition testimony can only implicate attorney-client privilege.[5] Documents may implicate both attorney-client privilege and work product protection, although the coverage may not be co-extensive. Furthermore, and importantly, defendants are not asserting reliance on the opinion of trial attorneys, but only the opinion of an attorney separately retained for his opinion.

Defendants contend that because they only rely on the advice of their opinion counsel, Mr. Shefte, they need only provide the materials and the opinion which Mr. Shefte supplied to them. Defendants object to providing opinions or documents supplied by trial counsel. Plaintiff counters that by relying on advice of counsel, defendants have waived all attorney-client and work product protection from whatever source.

 The cases dealing with discovery of attorney-client and work product material appear to be in general agreement that the client relying on advice of counsel waives attorney-client privilege with respect to the entire subject matter of the waiver and not just the specific opinion letter proffered. *Minnesota Specialty Crops, Inc. v. Minnesota Wild Hockey Club, L.P.,* 210 F.R.D. 673, 676 (D.Minn. 2002); *Chiron Corp. v. Genentech, Inc.,* 179 F.Supp.2d 1182, 1186 (E.D.Cal.2001); *Micron Separations, Inc. v. Pall Corp.,* 159 F.R.D. 361, 363 (D.Mass.1995); and *Thorn Emi North America, Inc. v. Micron Technology, Inc.,* 837 F.Supp. 616, 621 (D.Del.1993). Subject matter waiver does not mean all opinions as to all possible defenses, but does mean all opinions of the specific issue of advice asserted as a defense to willfulness, be it infringement, validity, enforcement, or a combination. *Greene, Tweed of Delaware, Inc. v. DuPont Dow Elastomers, L.L.C.,* 202 F.R.D. 418, 420–21 (E.D.Pa.2001); *Nitinol Medical Technologies, Inc. v. AGA Medical Corp.,* 135 F.Supp.2d 212, 217 (D.Mass. 2000); *Saint–Gobain/Norton Indus. Ceramics Corp. v. General Elec. Co.,* 884 F.Supp. 31 (D.Mass.1995). Of course, the court should always be careful to apply waiver on a case-by-case basis and, therefore, it is possible that advice as to other patents and defenses could become relevant. *Chiron Corp.,* 179 F.Supp.2d at 1186. In the instant case, defendants only assert a defense of willfulness based on non-infringement and no basis has been

---

often be litigation counsel, inasmuch as the client's faith in the competence of the attorney would be the prime reason for choosing counsel in the first place. *See* Molly Mosley–Goren, *et al., Patent Opinions and Litigation: The Client's Choice of Cou[n]sel,* 715 PLI/Pat 425, 427 (2002). However, when the trial attorney is chosen, special problems arise during discovery and, if the trial attorney will be called as a witness, this may force the attorney's removal from the case. Dragseth, *supra,* 80 Minn. L.Rev. at 188; *see* Mosley–Goren, *supra,* 715 PLI/Pat 425.

In *Quantum Corp. v. Tandon Corp.,* 940 F.2d 642, 643–44 (Fed.Cir.1991), the Federal Circuit suggested bifurcation of the willfulness issue as a means around those problems.

However, certain institutional factors serve to impede the use of bifurcation by the trial court as an effective remedy because of the increased cost should discovery and trial of the willfulness issue be stayed. *See F & G Scrolling Mouse, L.L.C. v. IBM Corp.,* 190 F.R.D. 385 (M.D.N.C.1999). And, at least from the practitioner's viewpoint, the view is that "many district judges find this impractical, especially in jury cases, and also find it inconsistent with the rapid disposition of cases." Mosley–Goren, *supra,* 715 PLI/Pat 425, at 437. Bifurcation is not present in this case.

5. Work product only encompasses documents and tangible things. Fed.R.Civ.P. 26(b)(3).

present for expanding the scope of the waiver. Therefore, only that part of defendants' attorney-client communications has been waived by defendants.

■ Defendants' contention that they only need to reveal Mr. Shefte's January 2001 opinion does not withstand scrutiny. The waiver of attorney-client privilege or work product protection does not, as defendants argue, exist solely at a particular point of time, such as when the client receives the opinion from counsel. As recognized by the Federal Circuit in *Crystal Semiconductor*, 246 F.3d 1336, because infringement is a continuing activity, the requirement to exercise due care and seek and receive advice is a continuing duty. Therefore, once a party asserts the defense of advice of counsel, this opens to inspection the advice received during the entire course of the alleged infringement. Consequently, the waiver of attorney-client privilege or work product protection covers all points of time, including up through trial. The waiver also is not limited to the advice given by opinion counsel. Since the waiver encompassed the subject matter of advice, that means that all opinions received by the client must be revealed, even those opinions the client receives from attorneys other than opinion counsel. Practical reasons exist for this rule. The exercise of due care requires a potential infringer to act reasonably. The infringer may not pick and choose between what opinions will be relied upon and which will be discarded. The totality of the circumstances test requires that all knowledge gained by the infringer relating to the advice subject matter must be re-

vealed so that the factfinder can make its own determination as to whether the reliance was reasonable. *Minnesota Specialty Crops*, 210 F.R.D. at 678–79; *Michlin v. Canon, Inc.*, 208 F.R.D. 172 (E.D.Mich. 2002); *Chiron Corp.*, 179 F.Supp.2d at 1187–88; *Micron Separations*, 159 F.R.D. at 363–64.

In the instant case, the Court determines that defendants have waived attorney-client protection with respect to the issue of infringement. Therefore, all opinions received by the client relating to infringement must be revealed, even if they come from defendants' trial attorneys, and even if they pre-date or post-date the advice letter of opinion counsel.[6]

■ Next, the Court addresses what documents defendants must turn over to plaintiff. Defendants only want to turn over documents generated by opinion counsel and claim all other documents which may discuss the issue of infringement are protected by work product protection. The courts have adopted a wider range of responses with respect to work product protection, especially when the documents in question have not been revealed by trial counsel to either the opinion counsel or the client. Because of their different bases, some courts have felt that waiver of work product protection, which is intended to protect effective lawyer preparation, should be more limited than when the issue involves attorney-client privilege. *Minnesota Specialty Crops*, 210 F.R.D. at 676.

---

**6.** In *Micron Separations, Inc. v. Pall Corp.*, 159 F.R.D. 361 (D.Mass.1995), the court found subject matter waiver, but out of concern over whether opinion work product was absolutely privileged, decided that trial attorney opinions need only be revealed if they conflicted with that of opinion counsel. However, the *Micron* court only dealt with documents and the work product protection issue. In the instant case, the Court has before it the issue of depositions, and that issue only concerns the waiver of attorney-client privilege, not work product protection. For these reasons, the Court will not employ the special "conflict" rule for trial attorney opinions.

The courts have generally split along two lines when determining the scope of work product protection waiver. *See Chiron Corp.*, 179 F.Supp.2d at 1188–89 (collecting cases). Those courts which opt for a more limited waiver of work product protection reason that the advice of counsel defense only implicates the state of mind of the client. Therefore, unless the client actually reviewed the work product, there is no necessary reason to require a broader waiver of work product protection. *Nitinol Medical Technologies, Inc.*, 135 F.Supp.2d 212; *Thorn Emi North America, Inc.*, 837 F.Supp. at 620–21.

Other courts have determined that a broader work product waiver should apply in order to prevent attorneys from "deliberately omit[ting] damaging information from their opinion letters in order to insulate their clients from a finding of willful infringement." *Mosel Vitelic Corp. v. Micron Technology, Inc.*, 162 F.Supp.2d 307, 312 (D.Del.2000); *Minnesota Specialty Crops*, 210 F.R.D. at 676–79; *Chiron Corp.*, 179 F.Supp.2d at 1189. These courts have expressed a concern about allowing a procedure that tempts attorneys and clients to cook up an advice opinion based mainly on its palatability for the trial while withholding unfavorable information. *Mosel Vitelic Corp.*, 162 F.Supp.2d 307; and *Dunhall Pharmaceuticals, Inc. v. Discus Dental, Inc.*, 994 F.Supp. 1202 (C.D.Cal.1998); *see Michlin*, 208 F.R.D. 172 (discussing how opinions might be manipulated without a full disclosure of the factors that went into those opinions). Therefore, these courts require full disclosure of attorney work product to be assured that the true state of affairs has been revealed. These cases employ waiver broadly as a prophylactic means of determining "true" intent to ensure that the intent is, in fact, subjectively reasonable.

The Court finds that the broad waiver rule requiring full disclosure of documents, even if they were not given to the client, is best suited to the situation where the opinion counsel is trial counsel. In that situation, the opinion counsel has a dual role in advertising the client and, thus, there is a greater need to make sure the opinion is not tainted by bias or other influences. And, counsel's uncommunicated thoughts and information may also be relevant in determining the competency of the opinion. That dilemma does not present itself in this case because defendants obtained an independent opinion counsel. To the extent that a broader waiver of work product protection might also disclose the trial attorney has been orchestrating a sham opinion with opinion counsel, the Court finds that possibility to be sufficiently remote and more difficult to orchestrate. Therefore, when the opinion counsel is independent, and should nothing else appear, the broader waiver of work product need not be employed.

Defendants need to reveal all documents relating to infringement which have been in their possession. This disclosure does not include work product in the trial attorneys' files which have not been revealed to the client or to the opinion counsel. However, if an opinion was written by trial counsel and given to the client, that document must be revealed, even though such documents constitute opinion work product, which is due extra protection. *See* n. 6, *supra*. If oral opinions of trial counsel must be revealed, there is no good reason to exempt written opinions, which are a more reliable form of evidence than the client's memory. To the extent that those written documents contain trial strategy not related to the infringement issue, they may be redacted.

**IT IS THEREFORE ORDERED** that plaintiff's motion to compel further discov-

ery (docket no. 59) is granted, and defendants' Rule 30(b)(6) deposition shall be continued and defendants must reveal all opinions received from any source at any time with respect to the issue of infringement, even if those opinions came from trial counsel. With respect to documents for which work product protection is claimed, defendants must produce those documents given to or generated by defendants relating to facts and opinions on the subject matter of infringement, even if those documents came from trial counsel.