**BASF AKTIENGESELLSCHAFT,**
**Plaintiff,**

v.

**REILLY INDUSTRIES,**
**INC., Defendant.**

**IP01–1936–C–Y/K.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Sept. 19, 2003.

Frederick D. Emhardt, Plews, Shadley, Racher & Braun, Indianapolis, IN, Paul M. Richter, Kenyon & Kenyon New York, NY, for Plaintiff.

John C. McNett, Woodard, Emhardt, Moriarty, McNutt & Henry LLP, Indianapolis, IN, for Defendant.

### ORDER ON PLAINTIFF'S MOTION TO COMPEL [1]

BAKER, United States Magistrate Judge.

## I. Introduction.

This cause is before the Court on a motion by BASF AG ("BASF") seeking to compel Defendant Reilly Industries, Inc. ("Reilly") to produce all documents and communications relating to the subject matter of the written opinion of counsel it produced as a defense to BASF's willful infringement claim. The motion seeks such documents and communications irrespective of whether they are dated before or after the filing date of this lawsuit. [Docket No. 73]. Reilly responds that BASF's attempt to delve into the thought processes of Reilly's counsel, including BASF's attempt to obtain information not specifically relayed to Reilly by counsel, are "at odds with principles of fundamental fairness, and would unfairly and unreasonably interfere with and disrupt Reilly's defense of this lawsuit." [Docket No. 76, p. 12]. For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART BASF's motion.[2]

## II. Discussion.

Reilly intends to rely on an opinion of counsel in response to BASF's claim of willful infringement. As a result, BASF claims that it must be allowed to "fully probe" both the competence of the opinion of counsel and the reasonableness of Reilly's reliance on it. [Docket No. 73, p. 7]. To do so, BASF asserts that it "must be given access to *all* Reilly's documents and communications relating to the subject matter of the Opinion of Counsel, *including those that post-date this lawsuit.*" [Docket No. 73, p. 7]. Reilly counters that "allowing BASF to rummage through Reilly's counsel's private papers and work product through the time of trial would not address the question of *Reilly's* intent and reasonable beliefs over six years ago when it decided that it could continue its process after learning of BASF's patent." [Docket No. 76, p. 8]. Reilly goes on to argue that allowing discovery of this information would "needlessly and unfairly interfere with trial counsel's defense of this lawsuit," and might even create an "ethical dilemma" whereby trial counsel might be drawn into being a material witness. [Docket No. 76, p. 8].

 While Reilly's concerns are legitimate, they are not dispositive. There are consequences to invoking the advice-of-counsel defense. As stated in *Chiron Corp. v. Genentech, Inc.*, 179 F.Supp.2d 1182, 1189–90 (E.D.Cal.2001):

> In sum, invoking the advice of counsel defense is not a painless decision or a free lunch. There are discovery consequences to such an assertion. Fairness requires that a party who seeks to be absolved of willful infringement because it relied on counsel's advise pay the dis-

---

1. The parties filed their briefs regarding the underlying motion to compel under seal. However, the Court does not believe that any of the information set forth in this order, or the conclusions reached in this order, may properly be deemed confidential and filed under seal. Accordingly, this order shall be filed by the Clerk without any restrictions on its dissemination.

2. BASF requested an oral argument on its motion to compel. [Docket No. 81]. The Court finds that the parties have thoroughly set forth their positions by way of written motions, and that oral argument is unnecessary. Accordingly, BASF's request for oral argument is denied.

covery price. The party asserting the defense waives attorney-client privilege and work product immunity to the broadest extent consonant with direct relevance to the advice of counsel itself. The parties do not dispute that Reilly has waived the attorney-client and work product privileges. Instead, the dispute revolves around how broadly that waiver runs. It is this question the Court must answer.

There is no bright line test to make this determination. Many courts have ruled on this issue, and there are many differing opinions. *See Lakewood Engineering and Manufacturing Co. v. Lasko Products, Inc.,* 2003 WL 1220254, *9 (N.D.Ill. March 14, 2003) ("The scope of the waiver is disputed among the circuits as well, and neither the Seventh Circuit nor the Federal Circuit, whose decisions are authoritative in the realm of patent law, have weighed in on the issue."). In considering the issue at hand, the Court must consider the scope of the waiver with respect to both the attorney-client privilege and work product protections and what effect, if any, the following factors have on those waivers: (1) the filing of suit; (2) the alleged ongoing nature of the patent infringement; (3) the fact that the opinion counsel and trial counsel are the same; and (4) Reilly's purported change of opinion with respect to its position on non-infringement. Not surprisingly, these considerations are intertwined.

### A. Pre–Suit Attorney–Client Privilege.

■ At the outset, with respect to the attorney-client privilege, it is generally agreed that a "defendant asserting an advice-of-counsel defense must be deemed to have waived the privilege as to all communications between counsel and client concerning the subject matter of the opinion."

*Steelcase, Inc. v. Haworth, Inc.,* 954 F.Supp. 1195, 1198 (W.D.Mich.1997). "Documents and testimony relating to that advice are relevant in that they are probative of the alleged infringer's intent. They are admissible because the alleged infringer has waived the privilege as to the subject matter of the advice." *Thorn EMI North America, Inc. v. Micron Technology, Inc.,* 837 F.Supp. 616, 621 (D.Del.1993). Therefore, the Court finds that Reilly has waived the attorney-client privilege with respect to pre-suit communications and, to the extent it has not already done so, Reilly must disclose all communications, including documents that were exchanged between Reilly and counsel, regarding the subject matter of the original opinion letter. This waiver includes the time period after Reilly received the opinion letter through the filing of this action.

### B. Pre–Suit Work Product.

■ However, the Court's inquiry does not stop there, as BASF seeks all documents relating to the opinion of counsel regardless of whether they were shared with or communicated to Reilly. On this issue, courts are divided into two camps. In the leading case in this district on this issue, Judge Hamilton aptly summarized the two views as follows:

On one side, for example, district courts held that waivers were limited to matters actually communicated between attorney and client in *Thorn EMI North America, Inc. v. Micron Technology, Inc.,* 837 F.Supp. 616, 620–22 (D.Del. 1993); *Steelcase Inc. v. Haworth Inc.,* 954 F.Supp. 1195, 1199 (W.D.Mich.1997); and *Nitinol Medical Technologies, Inc. v. AGA Medical Corp.,* 135 F.Supp.2d 212, 218–19 (D.Mass.2000). These courts have reasoned that the relevant intent is that of the client, not of the attorney. Thus, reliance on advice of an

attorney effects a waiver only regarding information known to the client, which could be relevant in deciding whether the client reasonably relied on the advice of the attorney.

On the other side, district courts ordered discovery of opining attorneys' internal drafts, research notes, and thought processes in *Greene, Tweed of Delaware, Inc. v. DuPont Dow Elastomers, L.L.C.,* 202 F.R.D. 418, 420, 422 (E.D.Pa.2001); *Novartis Pharmaceuticals Corp. v. EON Labs Mfg., Inc.,* 206 F.R.D. 396, 399 (D.Del.2002); *Mushroom Associates v. Monterey Mushrooms Inc.,* 24 U.S.P.Q.2d 1767, 1771 (N.D.Cal.1992); and *Handgards, Inc. v. Johnson & Johnson,* 413 F.Supp. 926, 929–31 (N.D.Cal.1976), among other cases. These courts have asserted that a fair test of the client's reliance on an attorney's opinion requires a full opportunity to explore the attorney's reasoning, including examination of internal drafts, research files, and thoughts and doubts that were never communicated to the client. See, e.g., *Novartis Pharmaceuticals,* 206 F.R.D. at 399.

*Eco Mfg. LLC v. Honeywell Intern., Inc.,* 2003 WL 1888988, \*4–5 (S.D.Ind. April 11, 2003). In *Eco,* Judge Hamilton found that, because the relevant issue is the intent of the alleged infringer and not that of its attorneys, discovery of the attorneys' work product that had not been communicated to the alleged infringer was inappropriate. *Id.* at \*6–7. The court further noted that allowing such discovery "creates a substantial risk of confusion and wasted time, money, and effort as lawyers duel over the ultimate merits of an opinion when the only relevant question is whether the client honestly and reasonably relied on the opinion." *Id.* at \*8. This reasoning is compelling.

Like the plaintiff in *Eco,* BASF argues that it is entitled to "counsel's thoughts and files that have not been communicated to the client" because they are "highly relevant to the issue of competency and, in turn, the reasonableness of the reliance on that opinion." [Docket No. 82, p. 7]. However, BASF attempts to distinguish *Eco* by arguing that because both the opinion counsel and trial counsel are the same, the waiver must be broader. The *Eco* decision does not address whether the opinion counsel and trial counsel were the same, so such a distinction is at best uncertain. Regardless, the Court disagrees with BASF's reasoning. The fact that Reilly's trial counsel is the same counsel who wrote the opinion letter is not outcome determinative here. That fact does not change the relevant inquiry—whether Reilly reasonably relied on the opinion of its counsel. As Judge Hamilton noted in *Eco:*

> That might be shown in several possible ways, but the attorney's "mental impressions, conclusions, opinions, or legal theories" are not relevant to the effort unless they were communicated to the client. Perhaps, for example, Eco Manufacturing chose not to provide all the relevant facts to its attorneys. Perhaps the opinion letter made factual assumptions that Eco Manufacturing knew or should have known were simply incorrect. Perhaps Eco Manufacturing officials who read the opinion knew enough applicable law to see a glaring omission in the legal analysis. Perhaps after Eco Manufacturing received an earlier draft opinion, it put some form of pressure on its attorneys to obtain a more favorable opinion.

*Id.* at \*6 (footnotes omitted). The same reasoning applies to the case at hand and, therefore, BASF cannot obtain counsel's work product which was not communicated to Reilly.

In making this determination, the Court is cognizant of the concerns noted by courts following the broader waiver point of view. *See Mosel Vitelic Corp. v. Micron Technology, Inc.*, 162 F.Supp.2d 307, 312 (D.Del.2000) (narrow view has "effectively encouraged patent counsel to place only the most favorable version of the facts and the law in their opinion letters, even if these attorneys are aware of other information which is far less helpful to their client."); *Cordis Corp. v. SciMed Life Systems, Inc.*, 980 F.Supp. 1030, 1034 n. 1 (D.Minn.1997). While noting that the narrower view point "creates some risk that intentional infringement (of patent or trademark rights) could be obscured by reliance upon deliberately incompetent opinions," the *Eco* court found that other factors outweighed those risks. *Eco*, 2003 WL 1888988 at *8 (broad approach "creates substantial risk of confusion and wasted time"; no "compelling reason for believing attorney's private papers and thoughts would be probative of the client's ability to rely on the attorney's advice"; and "independent attorneys have substantial internal and external reasons to provide competent and honest advice"). The Court agrees with *Eco*'s reasoning and finds that Reilly has not waived the work product privilege for any pre-suit documents that were not communicated or otherwise disseminated to Reilly.

## C. Post Suit Attorney–Client and Work Product Privilege.

■ BASF also argues that the attorney-client privilege waiver extends beyond the filing of suit through trial and "embraces all documents and communications relating to the *subject matter* of the opinion...." [Docket No. 73, p. 8]. There is certainly authority for BASF's position. *See AKEVA L.L.C. v. Mizuno Corp.*, 243 F.Supp.2d 418, 423 (M.D.N.C.2003); *Novartis*, 206 F.R.D. at 399 (focusing on waiver rather than alleged infringer's state of mind); *Chiron*, 179 F.Supp.2d at 1188–90; *McCormick–Morgan, Inc. v. Teledyne Indus., Inc.*, 765 F.Supp. 611, 613–14 (N.D.Cal.1991). These cases conclude that invoking the advice-of-counsel defense waives the attorney-client privilege and work product protections to the broadest extent possible, and order disclosure of communications and documents regarding the subject matter of the opinion through trial regardless of whether communicated to the client. While varying to some degree in their analysis, these courts reason that the patentee should be allowed to explore the state of mind of the alleged infringer's attorney as well as the mind of the alleged infringer. *Novartis*, 206 F.R.D. at 399; *AKEVA*, 243 F.Supp.2d at 424; *Chiron*, 179 F.Supp.2d at 1189; *McCormick–Morgan*, 765 F.Supp. at 613. Further, the courts reason that fairness dictates that a party cannot withhold damaging communications claiming attorney-client privilege while disclosing other self-serving communications. *AKEVA*, 243 F.Supp.2d. at 424; *Chiron*, 179 F.Supp.2d at 1186; *McCormick–Morgan*, 765 F.Supp. at 614.

On the other hand, there is conflicting authority which stands for the position that waiver of the attorney-client privilege and the work product privilege is limited to only those communications and documents created prior to suit. *See Motorola, Inc. v. Vosi Technologies, Inc.*, 2002 WL 1917256, *2 (N.D.Ill.2002); *Dunhall Pharmaceuticals, Inc. v. Discus Dental, Inc.*, 994 F.Supp. 1202, 1206 (C.D.Cal.1998); *Carl Zeiss Jena GmbH v. Bio–Rad Laboratories, Inc.*, 2000 WL 1006371, *2 (S.D.N.Y.2000); *Kelsey–Hayes Co. v. Motor Wheel Corp.*, 155 F.R.D. 170, 172 (W.D.Mich.1991). These courts reason that, in patent cases, "courts generally construe the scope of the subject matter

narrowly." *Kelsey–Hayes*, 155 F.R.D. at 172. In addition, the courts found that greater protection applied to litigation work product. As the Court in *Dunhall* stated:

> Although defendants have waived work product protection by asserting the advice of counsel defense, that waiver is not absolute. Once the lawsuit is filed, the waiver of work product protection ends. This temporal limitation follows from the enhanced interest in protecting against disclosure of trial strategy and planning. Following the filing of the lawsuit, defense counsel is engaged in critical trial preparation, often including analysis of the weaknesses of their client's case. Such analysis, while likely related to the subject matter of the asserted defense, is fundamentally different from a similar pre-litigation analysis. In comparison to work product produced prior to the filing of the lawsuit, litigation-related work product deserves greater protection. Because the Court finds that the balance of competing interests shifts at the time the lawsuit is filed, it rejects plaintiff's contention that the waiver should extend beyond the date that the lawsuit was filed.

994 F.Supp. at 1206.

Yet another line of cases takes the middle ground. *See Thermos Co. v. Starbucks Corp.*, 1998 WL 781120, *5 (N.D.Ill.1998); *Micron Separations, Inc. v. Pall Corp.*, 159 F.R.D. 361, 366 (D.Mass.1995); *Clintec Nutrition Company v. Baxa Corporation*, 1996 WL 153881, *1 (N.D.Ill.1996). These courts reason that, consistent with the principle of fairness, a party should not be allowed to rely on self-serving statements while withholding damaging or contradictory information under the pretense of the attorney-client privilege. However, the courts also noted a higher standard for waiver of opinion work product for trial counsel. Using these guidelines, the courts concluded that waiver extended to trial counsel only to the extent documents were communicated to defendants and contained conclusions or advice that contradict or cast doubt on the earlier opinions. *See Thermos*, 1998 WL 781120 at *4–5; *Micron*, 159 F.R.D. at 364–365; *Clintec*, 1996 WL 153881 at *1.

The Court finds the reasoning of this middle ground approach compelling and most applicable to the case at hand. Contradictions contained in the opinion of counsel revealed in the summary judgment briefs now before the Court compel this result. [Docket No. 73, p. 11]. Fairness dictates that the waiver extends post-suit once a party relying on the advice-of-counsel defense changes or alters its position as stated in the earlier advice-of-counsel opinion.[3] Reilly disputes that any contradiction exists and contends that it has remained "steadfast" in its positions. [Docket No. 76, p. 2]. BASF's reply brief, however, eviscerates this argument. The chart set forth by BASF in its reply brief shows a marked contradiction between positions that directly calls into question the competence of Reilly's opinion of counsel

---

**3.** In its brief, BASF notes that "Reilly has not produced a privilege log, so it is not known what post-lawsuit documents Reilly is withholding that relate to the subject matter of the Opinion of Counsel." [Docket No. 73, p. 6]. While the Court believes that, in light of this order, many documents Reilly believed to be privileged must be disclosed, the Court orders Reilly to produce a privilege log pertaining to those documents withheld based on privilege, if any. However, the privilege log shall not be limited to those documents relating to the subject matter of the opinion, but shall include all documents withheld from production based on privilege in response to a valid discovery request. In the interest of fairness, the Court believes a privilege log necessary to allow the opportunity for BASF to object, if necessary, and to ensure compliance with this order.

and the reasonableness of its reliance on an opinion from which Reilly may now be attempting to distance itself. [Docket No. 82, p. 3].[4] Accordingly, the Court finds that Reilly has waived the attorney-client privilege with respect to post-suit communications regarding the subject matter of the opinion letter. Reilly has also waived work product protections for all post-suit documents which have been communicated to or otherwise disseminated to Reilly regarding the subject matter of the opinion letter.[5]

█ Reilly argues this information would "needlessly and unfairly interfere with trial counsel's defense of this lawsuit," and might even create an "ethical dilemma" whereby trial counsel might be drawn into being a material witness. [Docket No. 76, p. 8]. To be sure, this fact is problematic for Reilly. "A party is entitled to discover relevant, non-privileged information from any individual with access to such information, even when that individual is the opposing party's trial counsel." *Environ Products, Inc. v. Total Containment, Inc.*, 41 U.S.P.Q.2d 1302, 1306 (E.D.Pa.1996) (allowing deposition of trial counsel). *See also AKEVA*, 243 F.Supp.2d at 421 n. 4 (M.D.N.C.2003) (recognizing that "special problems arise during discovery and, if the trial attorney

will be called as a witness, this may force the attorney's removal from the case"). Nonetheless, Reilly brought this problem on itself by choosing to retain the same counsel to litigate this matter that gave the advice-of-counsel opinion.[6]

Finally, BASF argues for the broadest possible waiver because this case involves allegations of continuing infringement. For this proposition, BASF relies on *AKEVA*, 243 F.Supp.2d at 423, and *Chiron*, 179 F.Supp.2d at 1188, stating "[c]ourts that have been confronted with the situation of continuing infringement have held that the waiver includes all attorney-client communications relating to the same subject matter of the opinion, even if it is from trial counsel." [Docket No. 82, p. 6]. As noted above, *AKEVA* and *Chiron* extend the waiver to the broadest possible limits, requiring disclosure of both attorney-client communications and work product, regardless of whether shared with the alleged infringer, through trial. Without regurgitating its analysis, the Court disagrees with such a broad waiver. Moreover, "[t]he willfulness of allegedly infringing activity is determined as of the date the activity began or the date on which the alleged infringer became aware of the patent, whichever is later." *Eli Lilly and Co.*

---

4. The Court is not, by way of this order, itself questioning the competence of counsel or the reasonableness of any reliance on counsel's opinion. Rather, the Court is merely noting that Reilly's apparent change in position has made these into legitimate issues that have risen to the forefront of this litigation.

5. Given Reilly's assertion that its summary judgment arguments are not contradictory, this waiver must necessarily extend to all such post-suit communications regarding the subject matter of the opinion letter rather than just communications that contradict or cast doubt on earlier opinions. Otherwise, Reilly would seemingly insist no such communications exist.

6. The Court notes that the scope of Reilly's waiver, as explained in this order, may open the door for the deposition of its counsel. However, BASF would be unable to inquire into Reilly's counsel's legal theories, mental impressions, opinions or other work product which were not communicated to Reilly regarding the subject matter of the opinion of counsel. As stated above, the relevant inquiry is whether Reilly reasonably relied on the opinion of its counsel. Thus, counsel's deposition may prove unnecessary. What Reilly communicated to counsel and what counsel communicated to Reilly may be obtained from other sources than Reilly's counsel, i.e. Reilly itself.

*v. Zenith Goldline Pharmaceuticals, Inc.,* 149 F.Supp.2d 659, 662 (S.D.Ind.2001), *citing Jurgens v. McKasy,* 927 F.2d 1552, 1562 (Fed.Cir.1991), and *Odetics, Inc. v. Storage Technology Corp.,* 185 F.3d 1259, 1276 (Fed.Cir.1999) ("The proper time to assess willfulness is at the time the infringer received notice ... making the relevance of later developments ... questionable at best.").[7] *See also Johns Hopkins University v. CellPro, Inc.,* 152 F.3d 1342, 1362 (Fed.Cir.1998). In this instance, the Court finds that Reilly has waived the attorney-client privilege and work product protections, to the extent disclosed to Reilly, post-lawsuit relating to the subject matter of the opinion of counsel. However, the Court does so not because the matter involves a continuing infringement, but rather, as explained above in detail, because Reilly has proffered a new and seemingly contradictory opinion during the lawsuit.

### III. Conclusion.

The Court expects the parties to work in good faith to adhere to the boundaries of this order. To assist in this process, the Court summarizes its holdings as follows:

1) Reilly must disclose any and all communications between Reilly and its counsel regarding the subject matter of the April 30, 2001 opinion of counsel. This, necessarily, extends to those differing and/or contradictory opinions stated in Reilly's summary judgment brief. This disclosure is not limited to a specific time frame and involves both pre- and post-lawsuit communications. In addition, this disclosure encompasses both the advice of Reilly's counsel *and* those facts and documents exchanged between Reilly and counsel that formed the bases of the opinions.

2) Reilly's attorneys must disclose any legal theories, mental impressions, opinions or other work product relating to the subject matter of the April 30, 2001 opinion of counsel *only to the extent* it was communicated to Reilly. This disclosure is not limited to a specific time frame and involves both pre- and post-lawsuit work product and, necessarily, extends to those differing and/or contradictory opinions as stated in Reilly's summary judgment brief.

3) Reilly shall produce a privilege log pertaining to all documents withheld from disclosure based on privilege and which Reilly believes are not otherwise required to be disclosed by this order. The privilege log shall include all documents withheld from production based on privilege in response to a valid discovery request, regardless of whether related to the subject matter of the opinion of counsel. The privilege log is not limited to a specific time frame and involves all documents withheld based on privilege both pre-and post-lawsuit.

For the reasons set forth, the Court GRANTS IN PART and DENIES IN PART BASF's motion to compel. Reilly shall produce to BASF the documents and communications subject to this order (including the privilege log) within 20 days.

---

7. In *Eli Lilly,* 149 F.Supp.2d at 664 n. 2, Judge Hamilton specifically declined to rule on this issue because that case involved a one-time act of infringement and not the continuing infringement allegations as are present in this matter. The *Eli Lilly* analysis is instructive nonetheless.