**INTEX RECREATION CORP.,**
**Plaintiff/Counterclaim**
**Defendant,**

**v.**

**TEAM WORLDWIDE CORPORATION,**
**Defendant/Counterclaim Plaintiff.**

**Civil Action No. 04–1785 PLF/DAR.**

United States District Court,
District of Columbia.

July 14, 2006.

William C. Casano, Esquire, Greenstein Delorme & Luchs, P.C., Washington, DC, for Plaintiff.

Linda Liu Kordziel, Fish & Richardson, P.C., Washington, DC, for Defendant.

## MEMORANDUM ORDER

DEBORAH A. ROBINSON, United States Magistrate Judge.

Pending for determination by the undersigned United States Magistrate Judge is Defendant Team Worldwide Corporation's Emergency Motion to Compel ("TWW's Motion") (Docket No. 50). Defendant moves to compel Plaintiff, "including its agents and attorneys [David] Makous and Lewis Brisbois Bisgaard & Smith LLP, to provide all testimony and produce all documents, including those formerly subject to the attorney-client privilege and work-product protection, on the subjects of infringement, validity, enforceability, and scope of the '469 patent[.]" TWW's Motion at 1. Plaintiff objects to the scope of Defendant's requests and submits that Defendant is only entitled to testimony and documents related to the defense of infringement. Opposition of Plaintiff/Counterclaim–Defendant Intex Recreation Corp. to Emergency Motion to Compel ("Intex's Opposition") (Docket No. 52) at 2. Upon consideration of the motion, the memoranda in support thereof and in opposition thereto and the entire record herein, TWW's motion will be GRANTED IN PART.

### Background

Plaintiff/counterclaim Defendant Intex Recreation Corporation ("Intex") brings this patent infringement suit seeking a judgement against Defendant/counterclaim Plaintiff Team Worldwide Corporation ("TWW") declaring that Intex's products do not infringe TWW's U.S. Patent 6,793,469 ("'469 Patent"), and that the '469 patent is invalid. Defendant Team Worldwide Corporation's Emergency Memorandum in Support of its Motion to Compel ("TWW's Memorandum") (Docket No. 50) at 1. In response to Intex's declaratory judgment action, TWW counterclaimed against Intex, and alleged that Intex's products willfully infringed the '469 patent. *Id.*

The circumstances which occasioned the filing of TWW's motion arose following TWW's receipt of Intex's fourth supplemental responses to TWW's first set of interrogatories. On May 11, 2006, in response to TWW's Interrogatory No. 9, Intex first revealed that it intended to rely on an oral opinion of counsel as a defense to willful infringement. TWW's Memorandum at 2; *see also id.,* Ex. 1 (IRC's Fourth Supplemental Responses to TWW's First Set of Interrogatories at 6). On May 18, 2006, TWW served a subpoena *duces tecum* on Intex's counsel, Mr. Makous, for deposition and production of documents related "to any opinions, and the investigation behind those opinions, that Mr. Makous or anyone at his law firm provided to IRC regarding infringement, validity, enforceability and/or scope of the '469 patent." Defendant's Memorandum at 2. Intex objected to the scope of the document requests and testimony sought by TWW. *Id.* at 3. Specifically, Intex objected to

providing any documents and testimony relating to subjects other than infringement, thereby precluding TWW from obtaining documents and testimony relating to advice with respect to validity, enforceability or the scope of the '469 patent. *Id.*

TWW filed its motion to compel on May 30, 2006. On June 14, 2006, the undersigned heard oral argument on the motion. At the hearing, the parties agreed that two issues were presented by the discovery dispute at issue in the motion: (1) the scope of Intex's waiver as result of its reliance on the advice of counsel as a defense to TWW's claim of willful infringement, and (2) the temporal limits of that waiver. Both parties relied upon a recent ruling of the Federal Circuit, *In re EchoStar Communications Corp.*, 448 F.3d 1294 (Fed.Cir.2006) (hereinafter *"EchoStar"*), in support of their arguments. TWW maintained that *EchoStar* holds that if an alleged infringer relies on the advice of counsel as a defense to a claim of willful infringement, the alleged infringer waives the attorney-client and work product privileges relating to the subjects of infringement, validity, enforceability and scope; Intex maintained that *EchoStar* stands for the proposition that the waiver is limited to the opinion on which it relies. The undersigned inquired of both parties whether any judge of this court had addressed this scope of waiver issue in the context of a patent case. Both parties indicated that they were unaware of any published opinions of any judge of this court addressing the issue. At the conclusion of the hearing, the undersigned took the motion under advisement.

### Analysis

TWW's motion concerns the scope of the waiver of the attorney-client privilege and work-product immunity arising from Intex's reliance upon advice of counsel as a defense to TWW's claim of willful infringement of the '469 patent. Intex does not dispute that "it has waived, to a certain degree, the attorney-client privilege and, to a lesser extent, its counsel's work product." Plaintiff's Opposition at 1. Rather, the dispute between the parties concerns the subject-matter scope and temporal limitation of Intex's waiver. The undersigned will address each issue in turn.

As a threshold matter, the undersigned will first address the law applicable to the instant dispute. As noted *supra*, the parties informed the undersigned that they were unaware of any reported decisions by judges of this court which addressed the issues presented by TWW's motion. However, following the hearing, the undersigned determined that at least two judges of this court had in fact addressed the issues presented by the motion in published opinion, and that one of the published opinions was an action in which Intex was a party. *See Intex Recreation Corp. v. Metalast, S.A.*, No. 01–1213, 2005 U.S. Dist. LEXIS 10149 (D.D.C. March 2, 2005) (hereinafter "Intex"); [1] *see also Simmons, Inc. v. Bombardier, Inc.*, 221 F.R.D. 4 (D.D.C.2004). In addition to the guidance provided regarding the substantive issues of the instant motion, the court in *Intex* also set forth this court's analytical framework for resolving disputes of this nature.

In *Intex*, the court held that resolution of discovery disputes and other procedural issues unique to patent litigation is guided by decisions of the Federal Circuit. *See Intex*, 2005 U.S. Dist. LEXIS 10149 at *7 (*citing Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1574–75 (Fed.Cir.

---

**1.** Intex's counsel of record in the instant case, Mr. Casano and Mr. Makous, were counsel of record in that 1 case as well.

1984)). Additionally, the court noted that the Federal Circuit had not yet resolved the "scope of waiver" issue, and that there is a split of authority among the district courts regarding the issue of whether the scope of waiver issue is a matter unique to patent law or a matter to be determined by precedent from the regional circuit courts. *Id.* at *7–8. The court held "that it is appropriate to resolve the scope of waiver issue by reference to Federal Circuit decisions on the nature of the advice of counsel defense and other district court decisions addressing the scope of waiver issue in patent infringement cases[.]" *Id.* at *8.

█ However, as counsel noted at the hearing, the Federal Circuit has now addressed the issue. In *EchoStar,* the Federal Circuit held that "questions of privilege and discoverability that arise from the assertion of the advice-of-counsel defense necessarily involve issues of substantive patent law." *EchoStar,* 448 F.3d at 1298 (*citing In re Spalding Sports Worldwide, Inc.,* 203 F.3d 800, 803–04 (Fed.Cir.2000)). Accordingly, the undersigned finds that it is appropriate to resolve the instant dispute by reference to Federal Circuit decisions on the nature of the advice-of-counsel defense and district court decisions addressing the issue of scope of waiver in patent infringement cases.

## 1. *Subject–Matter Scope*

█ In its memorandum, TWW submits that Intex "waived the attorney-client privilege and work product immunity for *all* communications between IRC and its counsel regarding the subject matter of this case as well as any documents reflecting any communications between IRC and its counsel[.]" TWW's Memorandum at 5. TWW contends that the Federal Circuit held in *EchoStar* that when an alleged infringer relies on the advice of counsel as

a defense to willful infringement of a patent, the alleged infringer waives its immunity for any document or communication concerning the defenses of validity, enforceability and infringement. *See EchoStar,* 448 F.3d at 1304. In further support of its contention that the Federal Circuit envisioned a broad subject-matter waiver, TWW notes that in describing the categories of documents that are discoverable following an accused infringer's reliance on advice of counsel, the Federal Circuit stated that the documents consist of communications "concerning the subject matter of the case." Defendant Team Worldwide Corporation's Reply in Support of its Emergency Motion to Compel ("TWW's Reply") (Docket No. 53) at 6. TWW submits that use of the phrase "subject matter of the case" rather than "subject matter of the opinion" evidences the Federal Circuit's intent to establish a broad subject-matter waiver.

Intex, in its opposition, submits that the waiver is limited to the subject matter of the underlying opinion given by counsel. Intex's Opposition at 5–6. Intex contends that language in *EchoStar* supports its position and that other district courts have similarly held that the waiver of the attorney-client and work product privileges is limited to the subject matter of the communication. *Id.; see Steelcase, Inc. v. Haworth, Inc.,* 954 F.Supp. 1195, 1198 (W.D.Mich.1997); *Akeva L.L.C. v. Mizuno Corp.,* 243 F.Supp.2d 418 (M.D.N.C.2003). In response to TWW's contention that the court in *EchoStar* held that a broad subject-matter waiver applies, Intex submits that "when read in the entire context of the opinion," the court did not mandate a waiver of "any possible defense, such as invalidity or enforceability," and instead, merely identified the defenses which could be available. *Id.* at 6–7.

The undersigned finds that Intex's expansive reading of *EchoStar* is without support. The facts surrounding the dispute in *EchoStar* are similar to those of the instant action. In *EchoStar*, Tivo, Inc. sued EchoStar for infringement of one of its patents and in response to an allegation of willful infringement, EchoStar asserted the defense of reliance on advice of counsel. *See EchoStar*, 448 F.3d at 1296–1297.[2]

As TWW noted in its memoranda and at oral argument, the Federal Circuit held in *EchoStar* that:

> [W]hen an alleged infringer asserts its advice-of-counsel defense regarding willful infringement of a particular patent, it waives its immunity for any document or opinion that embodies or discusses a communication to or from it concerning whether that patent is valid, enforceable, **and** infringed by the accused.

*EchoStar*, 448 F.3d at 1304 (emphasis supplied).

Intex offers no persuasive argument for the narrow reading it suggests of the *EchoStar* holding. Intex submits that prior to the cited language, the court in *EchoStar* recognized that "when a party defends its actions by disclosing an attorney-client communication, it waives the attorney-client privilege as to all such communications regarding the same subject matter." *EchoStar*, 448 F.3d at 1301 (*citing Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed.Cir.2005)). Intex further submits that when read in the entire context of the opinion, the Federal Circuit only listed the defenses that could be waived by a party's reliance on advice of counsel as a defense, and did not hold that all of the defenses are waived when counsel provides an opinion relating to willful infringement. Intex's Opposition at 6–7.

Upon a careful review of *EchoStar*, the undersigned first finds that the Federal Circuit did not expressly hold that when an alleged infringer utilizes advice of counsel as a defense to willful infringement of a patent, the waiver of the attorney-client privilege and work product immunity associated with that opinion is limited to the specific defenses (validity, enforceability, infringement) addressed in counsel's opinion. Rather, the language quoted from *Fort James* discusses the waiver of "all such communications regarding the same subject matter." The Federal Circuit does not define "subject matter" in the narrow fashion that Intex suggests.

Additionally, as TWW observed in its reply, the Federal Circuit, in describing the two categories of documents that are discoverable when an accused infringer relies on an opinion of counsel, stated that the discoverable documents consist of communications "concerning the subject matter of the case[.]" *EchoStar*, 448 F.3d at 1302. The use of the phrase "subject matter of the case" rather than "subject matter of the opinion" suggests that the Federal Circuit contemplated a broad waiver rather than the limited waiver envisioned by Intex.

Moreover, in describing the district court determination it was reviewing, the Federal Circuit stated that "[t]he district court held that by relying on advice of in-house counsel EchoStar waived its attorney-client privilege and attorney work-product immunity relating to advice of any counsel regarding infringement." *Id.* at 1297; *see also id.* at 1299 (*citing* district court order which held that "once EchoStar chose to introduce the opinion, it opened to inspection all related advice

2. Although Team Worldwide is the Defendant in this case, it has counterclaimed against Intex for willful infringement of the '469 patent, and Intex has relied upon advice of counsel as a defense to the alleged infringement. Plaintiff's Memorandum at 2.

sought and developed regarding EchoStar's potential infringement of the '389 patent.").

For these reasons, the undersigned finds that *EchoStar* does not provide authority for the narrow subject matter waiver of the attorney-client and work product protections which Intex urges. Instead, the undersigned finds that Intex has waived the attorney-client and work product privileges "for any document or opinion that embodies or discusses a communication to or from it concerning whether [patent '469] is valid, enforceable, and infringed[.]"

### 2. *Temporal Scope*

■ The second dispute between the parties concerns the temporal scope of the waiver. TWW submits that Intex must provide "all communications and documents reflecting such communications, regardless of date, concerning whether the '469 patent is valid, enforceable, and infringed, not just communications regarding the October 26, 2004 oral opinion." TWW's Memorandum at 7. In support of its contention, TWW submits that "[i]n *EchoStar*, the Federal Circuit clearly held that the waiver of the attorney-client privilege and work product immunity extends into the future for so long as the alleged infringement continues[.]" TWW's Reply at 2.

Intex, on the other hand, submits that "any inquiry by TWW with respect to communications and or work product after October 2004 must be, in order to avoid intrusion into trial counsel's strategies and mental impressions, further limited to such, if any, that are inconsistent with or cast doubt upon the validity or basis of Mr. Makous' oral opinion on October 26, 2004." Intex's Opposition at 9–10. Intex relies upon *Bristol–Myers Squibb Co. v. Rhone–Poulenc Rorer, Inc.,* 1999 WL 1021565, 52

U.S.P.Q.2d 1908, 1909 (S.D.N.Y.1999), and *Micron Separations, Inc. v. Pall Corp.,* 159 F.R.D. 361, 365 (D.Mass.1995), in support its argument. Intex further submits that if the temporal scope of waiver is overbroad, TWW would be able to "inquire into counsel's trial strategies, mental impressions and analyses[,]" thereby "pierc[ing] the 'zone of privacy for strategic litigation planning' and allow[ing][TWW] to 'piggyback' on IRC's counsel's preparations[.]" Intex's Opposition at 9–10. Intex does not argue that the waiver is confined to pre-suit advice of counsel; rather, Intex seeks a limitation so that TWW is not granted access to all of Intex's counsel's "trial strategies, mental impressions and analyses[.]" *Id.* at 9.

TWW, in its reply, submits that Intex's position was rejected by the Federal Circuit in *EchoStar,* and that a number of district courts have held that the alleged infringer cannot make unilateral determinations on the largely subjective question of what is "consistent" or "inconsistent" with the opinion on which the alleged infringer relied upon as a defense. TWW's Reply at 2 (*citing Convolve, Inc. v. Compaq Computer Corp.,* 224 F.R.D. 98, 104 (S.D.N.Y.2004); *Akeva L.L.C. v. Mizuno Corp.,* 243 F.Supp.2d 418, 423 (M.D.N.C. 2003); *Chiron Corp. v. Genentech, Inc.,* 179 F.Supp.2d 1182, 1188 (E.D.Cal.2001); *McCormick–Morgan, Inc. v. Teledyne Indus., Inc.,* 765 F.Supp. 611, 614 (N.D.Cal. 1991)). Additionally, TWW argues that Intex's concerns relating to TWW's inquiry into counsel's trial strategies is occasioned by Intex's use of the same law firm as both opinion and trial counsel, a practice that TWW submits "one district court has labeled an 'unconventional and risky arrangement'[.]" TWW's Reply at 4 (*citing Novartis Pharm. Corp. v. EON Labs Mfg., Inc.,* 206 F.R.D. 396, 399 (D.Del. 2002)).

The undersigned finds *EchoStar's* limited discussion concerning this issue is inapplicable to the instant dispute, and that Intex's suggested standard for determining the limits of discoverable communications and work-product has been previously accepted by this Court. TWW relies upon a footnote in *EchoStar* in which the Federal Circuit held that waiver of opinions and documents extends to advice and work product given after litigation commenced. *See EchoStar*, 448 F.3d at 1303 n. 4. However, the facts considered by the Federal Circuit in its limited discussion of the dispute in *EchoStar* are distinguishable from those present in the instant case. In *EchoStar*, the alleged infringer maintained that the waiver did not extend to advice given and work generated after the litigation began. *Id.* Here, the advice given by Mr. Makous, Intex's was given after Intex filed its complaint.[3]

Furthermore, in the instant case, Intex's concern is occasioned by the fact that opinion counsel and trial counsel are one and the same, and therefore an issue is presented regarding Intex's waiver of the attorney-client and work product protections that was not addressed in *EchoStar*. For these reasons, the undersigned finds that the Federal Circuit's limited discussion of the temporal scope of waiver in footnote 4 of its *EchoStar* opinion is not, as TWW suggests, dispositive of this dispute.

Although neither party addressed it in their written submissions or during oral argument, another judge of this court has already addressed the issue presented. In an action in which Intex was a party, this court addressed "the issue of any temporal limitation" on an alleged infringer's waiver of the attorney-client and work product protections. *See Intex*, 2005 U.S. Dist.

LEXIS 10149 at *15. In that case, the court recognized that:

> The issue of any temporal limitation on an otherwise broad waiver of attorney-client privilege has divided federal courts, with many courts insisting on the broadest waiver and hence disclosure of all communications and documents regarding the subject matter of the opinion through trial, while other courts construct the subject matter narrowly and limit waiver to communications and documents created prior to litigation, in order to maximize protection of litigation work product.

*Id.* (internal citations omitted). Upon a review of the relevant authorities, the court adopted the holding of *BASF Aktiengesellschaft v. Reilly Indus., Inc.*, 283 F.Supp.2d 1000, 1005–06 (S.D.Ind.2003), and found that:

> [A] 'middle ground' is the most appropriate approach to this issue,

> under which waiver extends only to those trial counsel work product materials that have been communicated to the client and 'contained conclusions or advice that contradict or cast doubt on the earlier opinions.' ... Hence, any otherwise privileged documents or other information generated by [the alleged infringer] or its counsel subsequent to the [opinion letters] issued in 2000 (including post-suit materials), and relating to the subject matter of those opinion letters, must be produced if the documents were communicated to [the infringer] and if they question or contradict in any way the competence or validity of the opinions rendered.

---

**3.** Intex filed its complaint on October 15, 2004; Mr. Makous communicated his oral opinion regarding infringement of the '469 patent on October 26, 2004. *See* Complaint (Docket No. 1); Defendant's Memorandum at 2.

*Intex*, 2005 U.S. Dist. LEXIS 10149 at *14–15 (*quoting BASF*, 283 F.Supp.2d at 1006).

The undersigned finds that the mechanism this Court has previously set forth is applicable to the instant dispute.[4] Accordingly, the undersigned now holds that Intex must provide "all testimony and produce all documents" generated by its counsel subsequent to Mr. Makous' October 26, 2004 oral opinion which either "question or contradict in any way the competence or validity of the opinions rendered."

*Conclusion*

Upon consideration of the TWW's Motion to Compel, the memoranda in support thereof and in opposition thereto and the entire record herein, it is this 14th day of July, 2006,

**ORDERED** that Defendant Team Worldwide Corporation's Emergency Motion to Compel (Docket No. 50) is **GRANTED IN PART**; and it is

**FURTHER ORDERED** that Plaintiff shall respond to Defendant's discovery requests in accordance with this Memorandum Order by no later than July 31, 2006; and it is

**FURTHER ORDERED** that in all other respects, TWW's Motion to Compel is **DENIED**.

4. Additionally, the circumstances of *Intex* are sufficiently similar to the instant dispute, since in that case Intex's trial counsel and opinion counsel were the same as well. *See id.* at *16.